UNITED STATES of America, Appellant,

v.

Anthony J. DiRUSSO, Appellee.

No. 76–1120.

United States Court of Appeals,
First Circuit.

May 20, 1976.

William A. Brown, Asst. U. S. Atty., Chief, Civ. Div., Boston, Mass., with whom James N. Gabriel, U. S. Atty., Boston, Mass., was on memorandum, for appellant.

Charles A. Clifford, Charlestown, Mass., for appellee.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

COFFIN, Chief Judge.

This application seeks review of the district court's grant of bail to a federal prisoner seeking § 2255 relief. *See Woodcock v. Donnelly,* 470 F.2d 93 (1st Cir. 1972); *Glynn v. Donnelly,* 470 F.2d 95 (1st Cir. 1972). The issue before us stems from the concern of a judge over the application, to a defendant he had sentenced, of the new "Paroling policy guidelines" of the United States Board of Parole. 28 C.F.R. § 2.20 (1975). The threshold legal question is: does the sentencing court have jurisdiction under 28 U.S.C. § 2255, when the prisoner is incarcerated in another district, to consider altering the sentence because the application of the guidelines is not what the court expected in imposing the sentence?

The prisoner, Anthony DiRusso, then age 18, and a first time offender, pleaded guilty to armed bank robbery in February, 1975, in the District of Massachusetts. He was

sentenced under the Federal Youth Corrections Act, 18 U.S.C. § 5010(b). After a stay of sentence to allow him to complete his senior year of high school, he entered the Federal Correctional Institution at Ashland, Kentucky, on June 19, 1975, where he eventually was given a tentative release eligibility date in strict accordance with the guidelines.

The guidelines are the result of an effort to introduce more consistency in parole decision-making, without being absolutely inflexible. They indicate ranges of time to be served before release would normally be contemplated, depending chiefly upon the severity of the offense and a "salient factor score", which is obtained by adding up points given for certain objectively determinable characteristics of the offender and which is deemed somewhat predictive of good adjustment to society. The resulting time range may be adjusted up or down, depending upon an exceptionally good or bad record within the prison. 28 C.F.R. § 2.20(a), (b), (c). Under the guidelines, petitioner's crime (bank robbery involving use of a weapon) bears an "offense characteristic" of "very high" severity, while his parole prognosis (or salient factor score) was "very good". These two factors gave him a period of 20 to 27 months before he could, normally, be released. The Parole Board, as the result of a review initiated by petitioner, applying its calculus, and using the maximum end of the range, made its "Tentative Decision" to defer any further review until August, 1977, which would be in petitioner's 27th month of incarceration.

On February 6, 1976, the prisoner filed a motion to vacate sentence under 28 U.S.C. § 2255. He alleged that he was not receiving "treatment", as mandated by § 5010(b), and that the Parole Board's use of its guidelines to establish an initial review date for him of August, 1977, was inconsistent with the sentencing judge's understanding that his parole eligibility would be made on the basis of his response to treatment, rather than on deterrence factors which are built into the guidelines. (For a successful attack similarly charging the guidelines are inconsistent with the Youth Corrections Act, see Fletcher v. Levi, (D.D.C., Jan. 16, 1976), 18 Crim.L.Rep. 2241 (Feb. 18, 1976).)

The sentencing judge, to whom the § 2255 petition was addressed, found that if the prisoner's allegations were true, relief would be appropriate. The court further indicated that it had been aware of the existence of the guidelines at sentencing, but that it had not contemplated that they could have had the alleged effect. Finding that a sentencing judge has "a responsibility to correct a sentence which was imposed under a misapprehension as to the potential impact" of the discretionary application of the guidelines, and further finding preliminarily that the facts supported the prisoner's claims, the court released the prisoner to bail pending ultimate determination of the merits.

■ Section 2255, however, does not grant jurisdiction over a post-conviction claim attacking the execution, rather than the imposition or illegality of the sentence. Lee v. United States, 501 F.2d 494, 500 (8th Cir. 1974); Robinson v. United States, 474 F.2d 1085, 1091 (10th Cir. 1973); Ridenour v. United States, 446 F.2d 57 (9th Cir. 1971); Mordecai v. United States, 137 U.S.App. D.C. 198, 421 F.2d 1133 (1969); see also Soyka v. Alldredge, 481 F.2d 303 (3d Cir. 1973); McCune v. United States, 374 F.Supp. 946 (S.D.N.Y.1974). The question here is whether petitioner's claim challenges the legality or the execution of the sentence.

■ The concept of illegality has been held to include not only facially illegal sentences but sentences premised upon a major misunderstanding by the sentencing judge as to the legal bounds of his authority. E. g., Thomas v. United States, 368 F.2d 941 (5th Cir. 1966) (sentence constituted penalty upon exercise of defendant's Fifth Amendment rights); Robinson v. United States, 313 F.2d 817 (7th Cir. 1963) (sentencing judge recommended parole under 18 U.S.C. § 4208 when conviction of crimes in question rendered defendant ineligible for parole); United States v. Lewis, 392 F.2d 440 (4th Cir. 1968) (sentencing judge under mis-

apprehension that use of § 4208(a)(2) was permissible only if maximum sentence imposed).

Recently the unhappiness of sentencing judges in discovering only after sentence the parole-deferring impact of the Parole Board guidelines has led some courts to equate an unawareness of the guidelines with such a mistake of law so as to justify a vacation and reduction of sentence under § 2255. The principal case is *Kortness v. United States*, 514 F.2d 167 (8th Cir. 1975), but there a sound jurisdictional basis existed apart from § 2255: since the prisoner was incarcerated in the district of the sentencing court, habeas jurisdiction existed under § 2241. *United States v. Slutsky*, 514 F.2d 1222 (2d Cir. 1975), has also been cited as supporting continuing § 2255 jurisdiction; but jurisdiction there was found solely on the basis of a timely motion under F.R.Crim.P. Rule 35.[1] Without confronting the jurisidictional problem, some § 2255 courts have relied on the teaching of these cases that unawareness of the new guidelines was sufficient justification for a reduction of sentence.[2]

█ We need not here address the issue whether such a formidable fact as jurisdiction for purposes of § 2255 may rest on the lack of awareness of the existence of the guidelines on the part of the sentencing court. In the case at hand the court acknowledged its awareness of the guidelines,[3] but was unaware that, as applied, they would "effectively mandate" petitioner's confinement for 27 months prior to any review for parole purposes without regard to petitioner's satisfactory response to treatment. The court apparently knew what the guidelines called for but assumed a much greater degree of flexibility in their application than is the case.[4] What looms large and open-ended to us is the implied principle that a proper claim for relief under § 2255 could be made to a sentencing judge by a prisoner confined in an institution in another district at any time when he can allege that the conditions of his confinement differ from what the judge had contemplated at the time of sentencing. Reading the grounds specified in § 2255,[5] we can find no license for this kind of continuing jurisdiction.

█ The proper vehicle for attacking the execution of sentence, including the application of guidelines established by the Parole Board, is 28 U.S.C. § 2241. *See, e. g., Grasso v. Norton*, 520 F.2d 27 (2d Cir. 1975); *Garafola v. Benson*, 505 F.2d 1212 (7th Cir.

---

1. The district court relied on *Slutsky* and two other cases, *United States ex rel. Mayet v. Sigler*, 403 F.Supp. 1243 (M.D.Pa.1975) and *Billiteri v. United States Parole Board*, 400 F.Supp. 402 (W.D.N.Y.1975). *Mayet* was a habeas corpus action, the custodian presumably being within the district, and in *Billiteri* jurisdiction was alleged under the Administrative Procedure Act, *see* D.C., 385 F.Supp. 1217.

2. In *Kortness* the guidelines had been published on the very date defendant was sentenced. In *Slutsky* the sentencing took place in 1974, after the guidelines had been published, but before judges in the Second Circuit had generally been made aware of them. We are aware of three subsequent district court cases relying on one or both of these cases, in all of which the district court had pronounced its sentence before the guidelines were announced or, in one case either before such time or before the court was aware of them. In two of the cases the court's order does not reveal whether or not the district of confinement and the district of sentencing were the same, *United States v. Mitchell*, (E.D.Mo., No. 71 CR 7(2), Nov. 30, 1975); *United States v. White*, (W.D.Ark., No.

FS–75–183–C, Dec. 22, 1975), and in one it is clear that the districts were not the same. *United States v. Randle*, N.D.Ill., 1975, 408 F.Supp. 5.

3. Attached to the presentence report given to the court was a memorandum indicating petitioner's "salient factor score", the "very high" rating of the severity of his offense, and stating that if petitioner were committed under the Youth Corrections Act, "he will serve between 20 and 27 months according to the Board of Parole Guidelines".

4. An exhibit reports that during the first half of 1975 83.8% of Parole Board discretionary decisions fell within the guidelines, only 8.7% having been more lenient.

5. "[S]entence . . . imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction . . . or that the sentence was in excess of the maximum authorized . . . or is otherwise subject to collateral attack."

1974). A writ of habeas corpus under the terms of that section, however, may be granted by district courts only "within their respective jurisdictions". *Braden v. 30th Judicial Circuit Court*, 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973), the most recent Supreme Court consideration of the jurisdictional requirements of § 2241(a), dispenses with the absolute requirement of *Ahrens v. Clark*, 335 U.S. 188, 68 S.Ct. 1443, 92 L.Ed. 1898 (1948), that the prisoner be located within the district court's jurisdiction. But *Braden* maintains the "minimum jurisdictional requisite of the presence of the custodian within the territorial confines of the district court". *Lee, supra*, 501 F.2d at 501. In this case, no custodian of the prisoner is within the District of Massachusetts. His immediate custodian is the warden of F.C.I., Ashland, Kentucky. To the extent that the Parole Board may be viewed as an alternate custodian given the issues raised by this prisoner, jurisdiction may exist as well in Washington, D. C. While this rule may seem somewhat wooden, *see Lee, supra*, 501 F.2d at 502 (Webster, J., concurring), it is a jurisdictional principle which we cannot ignore.

■ We are sensitive to the sentencing judge's concern for the welfare of those whom he has sentenced. And we recognize the protests by a number of courts which have felt that the guidelines have been applied mechanistically and that their use gives insufficient weight to judicial determinations. *Project, Parole Release Decisionmaking and the Sentencing Process*, 84 Yale L.J. 810, 889–94 (1975). But there are approaches other than attempting to stretch jurisdiction under § 2255. Petitioner's claim of frustration in pursuing his education seems likely to be temporary; the Board's counsel assured us that petitioner would soon be transferred to the Kennedy Youth Center in West Virginia, because of a change in mission of his previous place of confinement. There exists continuing opportunity for petitioner to invoke new reviews in which his family and the sentenc-

ing court can be involved. 28 C.F.R. § 2.21 (1975). More important, the issues raised by the prisoner here may be litigated as conveniently—perhaps more so—in the district of imprisonment. One claim is that the prisoner is not receiving treatment as required by the Youth Corrections Act; this is a question of fact for which all the witnesses are to be found at the place of confinement. The other claim, that the Parole Board guidelines are inconsistent with the Youth Corrections Act, is a question of law, easily raised by way of § 2241.[6]

The options for a sentencing judge seem to be to commit a convicted youth defendant to the Attorney General under 18 U.S.C. § 5010(b), knowing that current policy of the Parole Board, or to sentence for a limited term, forfeiting the possibility of expungement of a criminal record. In time the options may change, but in the meantime, we think that a sentencing court cannot follow a prisoner into another jurisdiction after the time for filing a Rule 35 motion has expired.

*Reversed and remanded with instructions to dismiss the petition for lack of jurisdiction.*

---

**6.** We note that P.L. 94–233, 90 Stat. 219, effective May 14, 1976, effects changes to the Youth

Corrections Act which may have bearing on this question.