**UNITED STATES of America, Appellant,**

v.

**Lawrence Francis McBRIDE,
Defendant, Appellee.**

**No. 77–1047.**

United States Court of Appeals,
First Circuit.

Argued March 8, 1977.

Decided June 20, 1977.

William A. Brown, Asst. U. S. Atty., Chief Civ. Div., Boston, Mass., with whom James N. Gabriel, U. S. Atty., Boston, Mass., was on brief, for appellant.

Mark S. Clark, Boston, Mass., with whom Henry B. Wynn, Boston, Mass., was on brief, for defendant, appellee.

Before COFFIN, Chief Judge, ALDRICH and CAMPBELL, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

In *United States v. DiRusso (DiRusso II)*, 548 F.2d 372 (1st Cir. 1976), we held that a sentenced prisoner could not use 28 U.S.C. § 2255[1] as a vehicle for attacking a sentence imposed after promulgation of the United States Parole Commission's new paroling guidelines on the ground that the different parole policies reflected in the guidelines caused the execution of the sentence to frustrate the intentions of the sentencing judge. We left open whether we would permit challenges under section 2255 to sentences imposed before promulgation of the guidelines. *Id.* at 375 n. 2. This case presents a section 2255 challenge to a pre-guideline sentence.[2]

Lawrence Francis McBride pleaded guilty to transmitting a telephoned threat to injure and kill a person with intent to extort money in violation of 18 U.S.C. § 875(b). On February 5, 1974, the district court sentenced him to six years imprisonment to be served concurrently with a state sentence then being served. The court ordered that McBride was to be eligible for parole at the end of a two-year period under 18 U.S.C. § 4208(a)(1) (1970), saying,

"I would not wish to extend the time beyond which the federal . . . parole board would be under a duty as

imposed by this sentence to consider you for parole beyond the time that the state authority would. I think it would be harmful if you received a parole—a determination was made that you are eligible for parole by the state authority and, yet the federal authority said: No we are not satisfied. I think that would be harmful to you, and I think it would be a crushing blow and, therefore, I am imposing in this sentence by direction to the United States Board of Parole that they ·are to consider you eligible for parole at the time that that determination is made as well by the state authorities."

As of January 21, 1977, McBride was paroled by state authorities after spending 36 months in state prison. However, prior to his state release date, McBride was told that his application for parole on his federal sentence had been denied and that he would be taken into custody at midnight January 20, 1977. The Government had conducted a record review,[3] and, after consideration of current parole guidelines, had determined that McBride would have to serve a total of 48 to 60 months before being released.

On January 19, 1977, McBride filed a Rule 35 motion for correction or reduction of sentence,[4] a motion under 28 U.S.C.

---

1. Section 2255 reads in relevant part:

   "A prisoner in custody under sentence of a court . . . claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence."

2. The court imposed sentence early in 1974, and paroling guidelines styled along current lines first came generally to the attention of district judges by attachment to pre-sentence reports in the fall of that year. The most recent guidelines found at 41 Fed.Reg. 37322 (September 3, 1976) have superceded those published in 28 C.F.R. § 2.20 (1976).

3. Under 28 C.F.R. § 2.16 (1976), when a federal prisoner is serving concurrent state and federal sentences in a state institution, parole consideration is by an examiner panel of the appropriate region "on the record only". The regula-

tion further provides that "[i]f such prisoner is released from his state sentence prior to a Federal grant of parole, he shall be given a personal hearing as soon as feasible after receipt at a Federal institution." McBride has had no hearing as he has not yet been received in a federal institution.

4. The Rule 35 motion was never acted on below. Fed.R.Crim.P. 35 provides in part,

   "The court may correct an illegal sentence at any time and may correct a sentence imposed in an illegal manner within the time provided herein for the reduction of sentence. The court may reduce a sentence within 120 days after the sentence is imposed . . ."

There can be no contention that the six year sentence imposed on McBride was illegal. Conviction under 18 U.S.C. § 875(b) carries a maximum sentence of 20 years. "Sentences subject to correction under [Rule 35] are those that the judgment of conviction did not authorize." *United States v. Morgan,* 346 U.S. 502, 506, 74 S.Ct. 247, 250, 98 L.Ed. 248 (1954). The

§ 2255 to vacate sentence and to resentence, as well as a motion for a temporary restraining order to prevent federal authorities from taking him into custody. After a hearing the next day, the district court granted the temporary restraining order holding that McBride stood to suffer irreparable harm and that his case was distinguishable from *United States v. DiRusso (DiRusso I)*, 535 F.2d 673 (1st Cir. 1976) and *DiRusso II, supra*. McBride was released on $1,000 bail without surety. A hearing on the section 2255 and Rule 35 motions was held in the district court on February 2, following which the court extended the temporary restraining order and determined that no security was required under Rule 35. The Government appeals from the restraining order and the granting of bail.[5]

McBride was sentenced under 18 U.S.C. § 4208(a)(1) (1970), since reenacted as 18 U.S.C. § 4205(b)(1) (Supp.1977). Section 4208(a)(1) provided:

"(a) Upon entering a judgment of conviction, the court having jurisdiction to impose sentence, when in its opinion the ends of justice and best interests of the public require that the defendant be sentenced to imprisonment for a term exceeding one year, may (1) designate in the sentence of imprisonment imposed a minimum term at the expiration of which the prisoner shall become eligible for parole, which term may be less than, but shall not be more than one-third of the maximum sentence imposed by the court . . . ."

The court was thus authorized to set, as it did, a date after which McBride would be eligible for federal parole. It was not, however, empowered to direct his release on parole at a certain time; determination of his fitness to be placed on parole, and of a parole release date, was left solely to federal parole authorities.[6] *See DiRusso II, supra*, 548 F.2d at 375; *United States v. White*, 540 F.2d 409, 411 (8th Cir. 1976).

At the time McBride was sentenced, the Parole Board's decisions were governed by 18 U.S.C. § 4202 (1970), now repealed,[7] which stated,

"A Federal prisoner . . . whenever confined and serving a definite term or terms of over one hundred and eighty days, whose record shows that he has observed the rules of the institution in which he is confined, may be released on parole after serving one-third of such term or terms or after serving fifteen years of a life sentence or of a sentence of over forty-five years."

While the statute was phrased in discretionary terms, it was then the practice to parole most prisoners at the one-third point of their terms. *See* 28 C.F.R. § 2.4 (1973). As matters stood in 1974, the district court might suppose (although it could not require) that at approximately the time McBride was considered by state authorities

---

120 days during which the sentence could have been reduced or corrected have long since passed leaving the sentencing court without jurisdiction under Rule 35 to alter the sentence. *See United States v. Robinson*, 361 U.S. 220, 224–25, 180 S.Ct. 282, 4 L.Ed.2d 259 (1960); Fed.R.Crim.P. 45(b)(2). *Cf. United States v. Slutsky*, 514 F.2d 1222, 1226–29 (2d Cir. 1975).

5. As the district court's so-called temporary restraining order, later extended, followed notice to the Government and a hearing and was of indefinite duration we regard it for purposes of appealability as a preliminary injunction. *See Graham v. Minter*, 437 F.2d 427, 428 (1st Cir. 1971) and cases cited therein; 9 Moore's Federal Practice ¶ 110.20[5] (1975). We review the Government's appeal from the granting of bail under our supervisory mandamus powers. *United States v. DiRusso (DiRusso II)*, 548 F.2d 372, 374 (1st Cir. 1976).

6. The district court could have assured McBride's federal release at the estimated time of state parole by sentencing him to two rather than six years.

7. Section 4202 was repealed by the Parole Commission and Reorganization Act of March 15, 1976, Pub.L.No.94–233, § 2, 90 Stat. 233. Section 4205(a) of the new Act provides that a prisoner shall be eligible for release on parole after serving one-third of his term, 18 U.S.C. § 4205(a) (Supp.1977) and section 4206 sets out parole determination criteria, 18 U.S.C. § 4206 (Supp.1977). The Board of Parole established by 18 U.S.C. § 4201 (1970), is now the United States Parole Commission. *See* 18 U.S.C. § 4202 (Supp.1977).

to be ready for parole he would also be paroled by federal authorities: the two year minimum sentence constituted one-third of his six year term and, further, coincided with McBride's likely date for state parole.

The new paroling guidelines changed all that. After McBride's federal eligibility date arrived, the Parole Commission, through an examiner, applied the guidelines which place considerable emphasis upon the severity of the original offense. It was determined that McBride would have to serve an additional 12 to 24 months before he could be released. The reasons were given as follows:

"Your offense behavior has been rated as very high severity. You have a salient factor score of 4. You have been in custody a total of 34 months.[8] Guidelines established by the Commission for adult cases which consider the above factors indicate a range of 48–60 months to be served before release for cases with good institutional program performance and adjustment. After review of all relevant factors and information presented, a decision outside the guidelines at this consideration is not found warranted."

Notice was given of a procedure of appeal to the Regional Commissioner and thereafter to the National Appeals Board. *See* 28 C.F.R. §§ 2.24, 2.25 (1976).

McBride argues that the sentencing court clearly anticipated that the old practice would apply and expected that the defendant would be released on federal parole at about the time of his parole by the state. Because the court might have imposed a different sentence had it known of the new guidelines, McBride argues that there was a fundamental error in sentencing which can be corrected by a section 2255 motion.

The Government replies that McBride became eligible for parole at the time appointed but that, at least at the initial level of the administrative process, parole has been denied. This result, it argues, is within the

discretion of the Parole Commission and does not render the original sentence "in violation of the Constitution or laws of the United States . . . in excess of the maximum authorized by law . . . [or] otherwise subject to collateral attack", 28 U.S.C. § 2255, since the sentencing judge simply had no right even in 1974 to control paroling policies or to assume that they would remain fixed for all time.

We agree with the Government. We left the present question open in *DiRusso II* because of decisions in the Eighth Circuit and elsewhere indicating that in preguide-line cases some courts were disposed to make an exception to the usual rule of sentence finality. We notice, however, that the Eighth Circuit, faced with "a flood of pro se § 2255 motions", *Jacobson v. United States,* 542 F.2d 725, 727 (8th Cir. 1976), has substantially limited its holding in *Kortness v. United States,* 514 F.2d 167 (8th Cir. 1975). *See, e. g., Ryan v. United States,* 547 F.2d 426, 427 (8th Cir. 1977); *Jacobson v. United States, supra,* 542 F.2d at 727; *United ed States v. White, supra,* 540 F.2d at 411. And the Ninth Circuit has flatly refused to find section 2255 jurisdiction to challenge a sentence the import of which was allegedly altered by the guidelines. *See Andrino v. United States Board of Parole,* 550 F.2d 519, 520 (9th Cir. 1977) (per curiam). The Third Circuit, to be sure, has gone strongly in the other direction, *see United States v. Somers (Ponzio),* 552 F.2d 108 (3d Cir. 1977), but, with due respect, we are unable to agree with the reasoning which leads that circuit to treat section 2255 as a vehicle for attack on otherwise proper sentences when parole authorities fail to measure up to the sentencing judge's expectations.

In *DiRusso I* and *DiRusso II* we rejected much the same argument as McBride now makes, the only difference being that the court which sentenced McBride had less reason to know that the guidelines would delay the accused's release date beyond that contemplated. In *DiRus-*

---

8. By the time McBride was released from state prison he had served a total of 36 months. The guidelines applicable to McBride at the time his case was reviewed are published at 41 Fed.Reg. 37322 (September 3, 1976).

*so,* although the court did not in fact appreciate the effect the guidelines would have on its sentence, information about the guidelines was available at the time of sentencing; here the court neither anticipated the effect of the guidelines nor was the necessary information available. We do not, however, see any critical difference between the two situations. In both instances the court's expectations were frustrated. The reason for the court's not anticipating the impact of the guidelines is unimportant. The basic question is whether, when shaping its sentence, the sentencing court's failure to predict what the parole authorities would do provides any ground to declare that the sentence itself is in the words of section 2255, "subject to collateral attack." The same reasons that led us in *DiRusso II* to hold that section 2255 does not give the district court jurisdiction to alter the sentence in that situation are equally applicable here.

The Parole Commission's authority over the granting of parole includes the power from time to time to alter policies within lawful limits. *See* 18 U.S.C. § 4203 (Supp.1977). To say that exercise of this power after sentencing renders an otherwise legal sentence subject to collateral attack beyond the 120 days allowed in Rule 35 for discretionary reduction of sentences seems inconsistent with the authority which Congress has vested in the Parole Commission. To be sure the judge's intentions may be frustrated, but the same may be true whenever new parole or corrections policies are adopted, or other changes vitally affecting the prisoner are made by authorities entrusted with such decisions. This is not to rule that the parole guidelines as executed in this or another case are themselves necessarily constitutional or within statutory authority. As we said in *DiRusso II,* such questions relate to the execution of the sentence and should be raised by a petition for habeas corpus, not by a section 2255 motion to vacate sentence and resentence.[9]

We see no principled distinction between the present case and any other where the Parole Commission, or other federal agency having custody of the prisoner, exercises its authority in what, for present purposes, must be assumed to be a legal manner but in a way contrary to the desires or expectations of the sentencing court. *Cf. Gomori v. Arnold,* 533 F.2d 871, 875 (3d Cir. 1976); *Casebeer v. United States,* 531 F.2d 949, 952 (9th Cir. 1976). We do not see how the agencies' proper exercise of their own authority can be said to reinvest the court with sentence review powers beyond those conferred by law.

If this seems like a harsh result, it must be measured against the impact of a different rule upon all existing sentences imposed prior to the guidelines. We see no distinction that can be fairly made between this case and the many others in which it may with equal plausibility be argued that the new parole policies, or other factors, have defeated the original sentencing expectations. Inconsistencies of this nature could only be avoided if the present bifurcation of authority between the courts and parole authorities were to be eliminated, but this is a matter for Congress, not the courts.

We would add, as we did in *DiRusso II,* that we hope parole authorities will give appropriate weight to McBride's conduct since release on bail, and also to the special problems that may be caused by the discrepancy between the sentencing court's express intentions and the impact of the guidelines. Sensitive consideration to such matters could help ease the difficulties caused during this transitional period and would avoid what must to McBride seem an unfair and bewildering process.

*The restraining order is hereby dissolved and the bail order is revoked.*

---

9. Because petitioner's assertion that the Parole Commission's action frustrated the sentencing judge's intent states no more of a claim under § 2241 than it does under § 2255, there is no point in considering whether we should treat petitioner's claim as based on § 2241 as well as on § 2255. *Cf.* 28 U.S.C. § 1653.