**Geoffrey T. DULDULAO, Petitioner,**

v.

**UNITED STATES PAROLE COMMISSION and W. J. Kenney, Warden, FCI, Miami, Florida, Respondents.**

No. 78–3797–Civ–SMA.

United States District Court,
S. D. Florida,
Miami Division.

Dec. 11, 1978.

Geoffrey T. Duldulao, pro se.

Jacob V. Eskenazi, U.S. Atty., Ana H. Barnett, Miami, Fla., for respondents.

## ORDER GRANTING WRIT OF HABEAS CORPUS (CONDITIONALLY)

ARONOVITZ, District Judge.

This cause is before the Court for consideration of the petition of Geoffrey T. Duldulao for a writ of habeas corpus pursuant to 28 U.S.C. Section 2241(c)(3). Petitioner contends that he is being wrongfully detained in violation of the Youth Corrections Act, 18 U.S.C. Section 5005 et seq. and the intentions of his sentencing court.

The facts of this case are not in dispute. On February 9, 1976, Petitioner pled guilty to unlicensed dealing in firearms. On May 7, 1976, he was sentenced to commitment to the custody of the Attorney General pursuant to the Youth Corrections Act, 18 U.S.C. Section 5010(b), by Chief Judge Jacob Mishler of the United States District Court, Eastern District of New York. On August 25, 1976, Petitioner appeared before the United States Parole Commission. The Commission denied parole and indicated that incarceration for longer than the guideline period was warranted, as Petitioner's offense " . . . was part of a large scale criminal behavior", Petitioner's Exhibit "B". His case was continued for eighteen months, the maximum allowable statutory period, Petitioner's Exhibit "B".

Petitioner's next appearance for parole was before the Atlanta Region of the United States Parole Commission on January 31, 1978. C. Michael Greer, Petitioner's case manager, recommended parole, Petitioner's Exhibit "E". He noted a positive response to confinement, a concern for self-improvement, active participation in institutional programs, and an excellent rating from his work supervisor.[1] The Atlanta Region de-

1. The relevant parts of Mr. Greer's report are as follows:

*INSTITUTIONAL ADJUSTMENT*

Mr. Duldulao was initially committed at FCI, Tallahassee, Florida on June 17, 1976. While at Tallahassee he was classified on July 29, 1976. Program goals included: upgrading his educational level through enrollment in the adult secondary education program and group counseling. Due to Mr. Duldulao's transfer to FCI, Miami, he was unable to complete any of the above programs.

Mr. Duldulao was received at FCI, Miami, Florida in transfer from FCI, Tallahassee, Florida on August 31, 1976. Primary reason for this transfer was to build the population at this facility.

Mr. Duldulao was classified at this facility on September 7, 1976. Program goals included: obtaining his GED, vocation training, unit recreation, voluntary group, social education, enrollment in the unit Human Resource Development program, group and correctional counseling program. Mr. Duldulao has completed the post secondary education program and received his General Equivalency Diploma and the following vocational training courses: Electricity and Electronics, General Business, Accounting, Recordkeeping, pre-vocational training, Introduction to Legal Research and Criminal Procedures. He has also completed the following college courses: Marketing, Business Management, Psychology 212, Psychology 102, Business 102, English, Social Science, Marriage Counseling and Personal Dynamics. He also completed the Human Resource Development program. The HRD program is a skill acquisition program, skills that are observably measured, trainable, and predictable. It is a systematic step-by-step program where an individual will hopefully be trained in the skills necessary to live, learn and work in this world effectively. This program has three distinct phases which afford an individual physical training, emotional/interpersonal training, and

nied parole. On appeal, the United States Parole Commission affirmed the denial of parole. The primary reason was that Petitioner's " . . . offense behavior was part of a large scale criminal activity in that 173 guns involved were a part of 200 guns stolen from foreign freight shipments; 27 guns were not recovered, some of the weapons have been signed in connection with other crimes", Respondent's Exhibit "A".

▮ The Court begins the analysis with a discussion of the jurisdictional bases of 28 U.S.C. Section 2255 and 28 U.S.C. Section 2241. Section 2241 provides for relief where a person is held in custody "in violation of the Constitution or laws or treaties of the United States", 28 U.S.C. Section 2241(c)(3). Jurisdiction is proper in Section 2241 cases only when the person being held in custody is within the territorial jurisdiction of the court considering the petition, 28 U.S.C. 2241(a). Petitioner is located within the territorial jurisdiction of the Southern District of Florida. Section 2255 allows a prisoner to challenge his federal sentence in the court which sentenced him. Petitioner was sentenced in the Eastern District of New York. A Section 2255 Motion is grounds for relief in instances where the federal prisoner attacks his custody on the grounds that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . ".

▮ Decisions of the parole commission are normally assailable solely in a Section 2241 proceeding. See *Blau v. United States*, 566 F.2d 526 (5th Cir. 1978); *Addonizio v. United States*, 573 F.2d 147 (3rd Cir. 1978); *Edwards v. United States*, 574 F.2d 937 (8th Cir. 1978); *United States v. McBride*, 560 F.2d 7 (1st Cir. 1977); *Wright v. United States*, 557 F.2d 74 (6th Cir. 1977); *Andrino v. United States Board of Parole*, 550 F.2d 519 (9th Cir. 1977). Some courts have recognized a limited exception to this general rule, by allowing a Section 2255 Motion in cases where the petitioner attacks a facially valid sentence on the basis that the parole commission violated the intentions of the sentencing judge. See *Addonizio v. United States, supra; Edwards v. United States, supra; United States v. Bowdach*, Case No. 71–114–Cr–CA (S.D.Fla. October 25, 1978); but see *Dioguardi v. United States*, 587 F.2d 572 (2nd Cir. 1978); *United States v. McBride, supra; Wright v. United States, supra*, (at least where the action is based upon unrecorded subjective intentions of the sentencing judge); *Andrino v. United States Board of Parole, supra*. Those courts which have allowed a Section 2255 Motion have based their decisions on a broad interpretation of the part of Section 2255 which allows relief where the sentence "is otherwise subject to collateral attack . . . ". See *Addonizio v. United States, supra*. The power of a court in a Section 2241 proceeding is much narrower. Section 2241 provides relief only where the petitioner is incarcerated in violation of the laws or Constitution of the United States. Thus, a claim that the sentencing judge's intentions

---

to a degree that resources permit, an intellectual phase. An individual who actively participates in all three phases of the program will hopefully, internalize positive standards of behavior. Mr. Duldulao is also a member of the FCI, Miami Jaycees and holds the position of secretary.

Mr. Duldulao is assigned to the Education department as a clerk in the Legal Library and is receiving excellent work reports. He has maintained a clear conduct record and has made an overall satisfactory institutional adjustment to this date. His leisure time is spent reading, watching television and performing his duties as secretary of the FCI, Miami Jaycees.

EVALUATION AND RECOMMENDATION
FOR RELEASE

Mr. Duldulao has made a very positive response to his confinement. He has shown a concern for self improvement through his active participation in institutional programs and his excellent rating from work supervisor had indicated his ability to follow set policies and maintain good work habits.

In view of Mr. Duldulao's satisfactory institutional adjustment and program involvement, the unit team recommend that he be granted parole at this time.

were frustrated does not state a claim in a Section 2241 proceeding.

■ This Court recognizes that it has an obligation to construe *pro se* petitions liberally. The Court will therefore treat Petitioner's frustration of intent claim as a motion to vacate pursuant to Section 2255. Petitioner was sentenced in the Eastern District of New York. This Court must therefore dismiss the frustration of intent claim without prejudice. Petitioner should be aware that he is free to pursue this claim in the Eastern District of New York and that any determination of this case in a Section 2241 proceeding is not *res judicata* on this Section 2255 claim. See *Addonizio v. United States, supra.*

■ The second question presented for resolution requires the Court to determine if the denial of Petitioner's parole violated the parole release provisions of the Youth Corrections Act, 18 U.S.C. Section 5017(a). This asserted ground presents a pure question of law and is cognizable, if at all, in a Section 2241 proceeding. In deciding this very question, the second circuit noted jurisdiction under Section 2241 without discussion. *Shepard v. Taylor*, 556 F.2d 648 (2nd Cir. 1977).

The Court must determine in what circumstances the severity of an offense may be used for determination of parole for a youth offender who was committed on May 7, 1976. The Court shall begin the inquiry with a discussion of the purposes of the original Youth Corrections Act and the changes to it caused by the Parole and Reorganization Act of 1976, 18 U.S.C. Section 4201 et seq. In enacting the Youth Corrections Act, Congress created a program designed to deal with the special problems of youthful offenders. The legislation established a Youth Corrections Division to "provide for the youthful offenders committed to it . . . a system of analysis, treatment, and release that will cure . . . the anti-social tendencies that have led to the commission of the crime", Youth Offenders—Treatment and Rehabilitation, House Report No. 2979, *reprinted in* 1950 U.S.Code Cong.Serv. at 3983. The sig-

nificance of the bill was that "[I]t depart[ed] from the mere punitive idea of dealing with criminals and look[ed] primarily to the objective idea of rehabilitation" id., *reprinted in* 1950 U.S.Code Cong.Serv., pp. 3983, 3985.

In the words of Mr. Chief Justice Burger, the importance of the confinement element of the program was that " . . . the execution of sentence was to fit the person, *not the crime . . .* " (emphasis supplied). *Dorszynski v. United States*, 418 U.S. 424 at 434, 94 S.Ct., 3042, 3048, 41 L.Ed.2d 855. Thus, the Youth Corrections Division was empowered to order conditional release of a youth offender at any time and was required to order conditional release four years from the date of his conviction, 18 U.S.C. Section 5017(a), (c).

On March 15, 1976, Congress passed the Parole and Reorganization Act, which partly amended and partly repealed the Youth Corrections Act. The Parole and Reorganization Act went into effect on *May 14, 1976.* (This was three months after Petitioner had entered his plea of guilty and seven days after sentence.) It made three major changes in youth offender parole cases:

1. It abolished the Youth Corrections Division;

2. It amended 18 U.S.C. Section 5017(a) to make the criteria for youth offenders the same as for adult offenders; and

3. It empowered the United States Parole Commission to formulated guidelines for paroling prisoners using the criteria provided in the Parole and Reorganization Act, 18 U.S.C. Sections 4203(a)(1), and 4206(a).

New Section 4206(a) requires the Parole Commission to " . . . weigh the concepts of general and special deterrence, retribution and punishment", Senate Report 94–369 at 26, reprinted in 1976 U.S.Code Cong. & Admin.News at 358. The amendment to Section 5017(a) expressly applied the Section 4206(a) criteria to youth offend-

er cases.[2] Parole was no longer to be determined solely by the rehabilitation of the youth offender and the likelihood that he would commit another crime; i. e., special deterrence. The new criteria added the effect that paroling the youth offender would have on others; i. e., general deterrence, retribution, and punishment. It is clear that sentences under the new criteria were to fit the crime, not the person.

Pursuant to its new authority and the Section 4206(a) criteria, the Parole Commission formulated its first parole guidelines for youth offenders, 41 Fed.Reg. 19327 (May 12, 1976); 41 Fed.Reg. 22344 (June 3, 1976). These guidelines were codified at 28 C.F.R. 2.20 (1976).[3] The guidelines rate the severity of the offense and the offender's characteristics to develop a presumptive parole date. The offender's characteristics are computed into a salient factor score. The salient factor score is arrived at by considering prior convictions and incarcerations, the offender's age at his first commitment, whether the commitment offense involved auto theft or checks, the prisoner's conduct when previously on parole or probation, if the offender had a history of heroin or opiate dependence, and the offender's employment or school attendance during his last two years in the community.[4] Petitioner was denied parole after 20 months because his offense was a part of a large scale criminal activity.

Because of the major changes brought by The Parole and Reorganization Act, it is crucial to determine if Petitioner's parole eligibility should be determined by the criteria in effect at the time he was sentenced or when he was considered for parole. In deciding the same question presented in the instant case, the United States Court of Appeals for the Second Circuit held that

criteria for parole eligibility was determined at the time of sentence. *Shepard v. Taylor*, 556 F.2d 648 (2nd Cir. 1977).

The *Shepard* decision relied upon the decision of the Supreme Court of the United States in *Warden v. Marrero*, 417 U.S. 653 (1974), 41 L.Ed.2d 383, 389, 94 S.Ct. 2532, 2535, 41 L.Ed.2d 383. The issue in that case was whether a prisoner became eligible for parole consideration upon the after sentence repeal of a statute which had prohibited the prisoner from being considered for parole. The Supreme Court held that parole eligibility was determined at the time of sentence:

"(Parole eligibility) is implicit in the terms of the sentence. And because it could not be seriously argued that sentencing decisions are made without regard to the period of time a defendant must spend in prison before becoming eligible for parole, or that such decisions would not be drastically affected by a substantial change in the proportion of the sentence required to be served before becoming eligible, parole eligibility can be properly viewed as being determined— and deliberately so—by the sentenc[ing] of the district judge." 417 U.S. at 658, 94 S.Ct. at 2535.

This Court is aware of the factual distinctions between *Marrero* and the instant case; *Marrero* was concerned with eligibility for parole *per se* and the instant case is concerned with the criteria which should determine parole eligibility.

█ This Court agrees with the *Shepard* Court in extending the *Marrero* rationale to parole criteria in youth offender cases. The applicable criteria may be just as important

---

**2.** The legislative history reveals that the purpose of the amendment to 18 U.S.C. Section 5017(a) was to provide parallel release criteria for all eligible prisoners, Senate Report No. 94–369 at 37, reprinted in 1976 U.S.Code Cong. & Admin.News at 369.

**3.** The parole guidelines have remained the same since 1976, at least for Petitioner. 28 C.F.R. 2.20 (1978); 28 C.F.R. 2.20 (1977).

**4.** The Court notes in passing that consideration of a prisoner's age at the time of his first commitment works against the youth offender. The offender's salient factor score is lower if he was first committed at a young age. A lower salient factor score results in longer incarceration before parole. See 28 C.F.R. 2.20 (1978). This certainly seems to be inimical to the purposes of The Youth Corrections Act.

to sentencing decisions as eligibility for parole *per se*. This is especially true in youth offender cases, as the Judge had the option of sentencing the youth offender as an adult, 18 U.S.C. Section 5010(a). The case at bar illustrates the importance of having parole criteria determined at the time of sentencing. The sentencing Judge in this case deliberately chose to sentence Petitioner as a youth offender because Section 5010(b) confinement was not punishment. At sentencing, the Judge said, "This is the kind of case that 5010(b) was meant for, a boy of his age where he can study, go to school and learn. This is not punishment. This is hopefully treatment.",[5] Petitioner's Exhibit "I" at 9. Accordingly, this Court holds that Petitioner's eligibility for parole should have been determined by the criteria in effect on May 7, 1976.[6]

The Court submits that its conclusion is further supported by the opinion of the United States Court of Appeals for the Fifth Circuit in *United States v. Haas*, 576 F.2d 618 (5th Cir. 1978). The issue in that case was whether the misdemeanor parole provision of The Parole and Reorganization Act should apply to a prisoner who pled guilty *before* the effective date of the Act but was sentenced after the effective date of the Act. The Fifth Circuit held that the sentencing provisions of The Parole and Reorganization Act should not apply to a prisoner who pled guilty before the effective date of the Act. Petitioner in the case at bar pled guilty *and* was sentenced before the effective date of the Act.

 To summarize, this Court holds that the provisions of The Parole and Reorganization Act, which added punishment, retribution and general deterrence, do not apply to Petitioner. The only item remaining is the formulation of a proper remedy;

"This court is mindful of the necessity of not interfering with the decisions of the parole board and not second guessing the exercises of discretion vested in the parole commission.", *United States v. Bowdach, supra,*

and is of the opinion as stated therein that this is an instance where

"it may be sufficient for the parole commission to give meaningful consideration to the incarcerated petitioner using the former guidelines and ignoring the salient factor standards." *Bowdach, supra.*

Accordingly, it is

ORDERED AND ADJUDGED that the Writ shall issue and be GRANTED, unless the Parole Commission grants, within twenty (20) days hereof, a hearing to the Petitioner on his application for parole which hearing shall be held in accordance with the provisions of the Youth Corrections Act as it existed prior to May 15, 1976 and applying the standards as they existed prior thereto with a decision thereon within ten (10) days thereafter.

This Court shall retain jurisdiction of this cause for any further proceedings in connection therewith.

DONE AND ORDERED this 11 day of December, 1978.

**5.** The sentencing Court is not quoted to show that its intentions were frustrated. This Court cites the sentencing Court to show that the *Marrero* rationale should be extended to parole criteria in youth offender cases because sentencing decisions are in fact made with the applicable parole criteria in mind.

**6.** The Court does not reach the question of whether application of the new criteria is an *ex post facto* application of law, rather it decides that the proper standard was the old criteria.