Paul E. JOHNSON, Petitioner, Appellant,

v.

UNITED STATES of America,
Respondent, Appellee.

Nos. 80–1439, 80–1514.

United States Court of Appeals,
First Circuit.

Argued March 2, 1981.

Decided May 28, 1981.

As Amended June 5, 1981.

Albert F. Cullen, Jr., Boston, Mass., by appointment of the Court, with whom Cullen & Wall, Boston, Mass., was on brief, for appellant.

Marianne B. Bowler, Asst. U. S. Atty., Boston, Mass., with whom Edward F. Harrington, U. S. Atty., Boston, Mass., was on brief, for appellee.

Before COFFIN, Chief Judge, CAMPBELL and BREYER, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

Petitioner, Paul E. Johnson, appeals the district court's dismissal of two motions to "modify, correct or vacate sentence," filed pursuant to 28 U.S.C. § 2255.[1]

I.

On April 15, 1975, Johnson was arrested by agents of the United States Secret Service. Johnson consented to a search of his automobile, which revealed approximately $146,515 in counterfeit currency as well as plates and negatives used in its production. Johnson later allowed a search of his business from which agents removed further counterfeiting materials. On October 3, 1975, Johnson entered a plea of guilty to two counts of a three-count indictment charging violations of the federal counterfeiting laws, 18 U.S.C. §§ 471–72 & 474. His plea was the result of a "plea bargain" agreement with the United States Attorney's office, pursuant to which that office

1. The petitions, filed May 16, 1979 and July 8, 1980, raised similar and overlapping issues. For purposes of our discussion, no effort will be made to distinguish between the contents of the two petitions.

promised to recommend a sentence not to exceed five years. Johnson alleges he was also informed, by both his attorney and the Assistant United States Attorney in charge of the case, that federal parole guidelines then in effect indicated a probable range of 26 to 32 months to be served for the offenses prior to release on parole.

On December 15, 1975, Johnson appeared before the district court for disposition, and was sentenced to seven years' imprisonment. Execution of sentence was stayed until January 2, 1976, at Johnson's request. Johnson failed to appear on that date, however, and was a fugitive until finally apprehended on August 3, 1978, when he began serving his sentence.

Johnson pleaded guilty to failure to appear for execution of sentence, in violation of 18 U.S.C. § 3150, and, on November 6, 1978, was sentenced to a one-year term to be served on and after his previous sentence for counterfeiting. On November 21, 1978, Johnson also pleaded guilty to an additional charge of conspiracy to pass counterfeit currency, and was sentenced to a five-year prison term to be served concurrently with the original seven-year counterfeiting sentence. Johnson is thus now serving an aggregated eight-year sentence under four separate convictions.

On July 18, 1979, some eleven months after Johnson entered prison, his parole status was reviewed by an examining panel of the United States Parole Commission. Relying on parole guidelines which became effective June 4, 1979, 44 Fed.Reg. 26542 (May 4, 1979), the Commission recommended that Johnson "continue to expiration" his combined eight-year sentence.

Johnson's primary contention in his petitions to the district court, and on appeal, is that his plea of guilty entered October 3, 1975 was not intelligently made, as required by Rule 11 of the Federal Rules of Criminal Procedure, in that it was predicated on his

understanding that the parole guidelines in effect in 1975 would apply to his sentence and that, in all likelihood, he would serve in the range of 26 to 32 months on the original counterfeiting charges. In addition, Johnson contends that the 1975 sentence should be vacated because 1) the sentencing judge made certain "false assumptions" about Johnson's criminal record; and 2) the Assistant United States Attorney undermined the plea bargain agreement. We examine each argument in turn.

## II.

An evaluation of Johnson's Rule 11 claim requires some understanding of the evolution of the United States Parole Commission's "Guidelines for Parole Decisionmaking." The Commission, as was its predecessor the Board of Parole, is empowered by Congress to determine the fitness of eligible federal prisoners for release on parole. 18 U.S.C. §§ 4201 et seq. Prior to 1973, the Board of Parole did not uniformly apply guidelines to assist in making parole decisions, which were mainly committed to the agency's unstructured discretion. See Project, *Parole Release Decisionmaking and the Sentencing Process*, 84 Yale L.J. 810, 820–22 (1975) (hereinafter *"Yale Project"*); see also *United States v. Addonizio*, 442 U.S. 178, 181–82 & nn. 3–4, 99 S.Ct. 2235, 2237–2238, 60 L.Ed.2d 805 (1979). In November 1973, largely in response to criticism of its case-by-case decisionmaking process, the Board commenced nationwide application of guidelines which were similar in form to the guidelines applied here.[2] See 38 Fed.Reg. 31942–45 (Nov. 19, 1973). The guidelines were drawn as a table in the form of a grid, on which a calculation of a prisoner's "offense severity" rating and his "salient factor score" (representing an evaluation of the particular offender's characteristics and parole prognosis) yielded the "customary" range of time such a prisoner would serve under normal circumstances—a

2. The guidelines were adopted "[t]o establish a national paroling policy, promote a more consistent exercise of discretion, and enable fairer and more equitable decision-making without removing individual case consideration." 38

Fed.Reg. 31942 (Nov. 19, 1973). Such guidelines are now required by statute. 18 U.S.C. § 4203(a). The current version of the guidelines is found at 28 C.F.R. § 2.20 (1980); see generally id., §§ 2.1–2.60.

time range expressly contingent upon good institutional conduct. *See generally Geraghty v. United States Parole Commission,* 579 F.2d 238, 241–43 (3d Cir. 1978), *vacated on other grounds sub nom. United States Parole Commission v. Geraghty,* 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980).

Under the guidelines in effect at the time of Johnson's plea, October 1975, Johnson's offense severity rating would likely have been "High," which included "Counterfeiting (Manufacturing)" and "Counterfeit Currency (Passing/Possession $20,000 or more)." His salient factor score would likely have been 4, or "Fair." Given these indices, the table would have shown a probable range of 26 to 32 months to be served prior to parole—the range allegedly quoted to Johnson by his attorney and included in the presentence investigative report.

The Parole Commission revised its guidelines on September 3, 1976, *see* 41 Fed.Reg. 37322. Had Johnson entered prison on January 2, 1976, as ordered, it is likely that either the 1976 guidelines, or a similar 1977 revision (42 Fed.Reg. 39813–14 (Aug. 5, 1977)), would have been used at his initial parole hearing. Under these guidelines Johnson's salient factor score would have been 3, or "Poor." His offense severity rating, based on the original counterfeiting convictions alone, would have been either "High" or, more likely, "Very High."[3] If

High, the guidelines would have indicated a probable range of 34 to 44 months to be served; if Very High, the range would have been 60 to 72 months.

The guidelines were again revised on May 4, 1979, *see* 44 Fed.Reg. 26542. Because Johnson did not begin serving his sentence until August 1978, and therefore did not receive an initial parole hearing until July 1979, the 1979 guidelines were applied to his case. Under these guidelines Johnson's salient factor score was again 3, "Poor." Had the Commission been considering only the two original counterfeiting convictions, Johnson's offense severity rating would likely have been "Very High," again indicating a range of 60 to 72 months to be served prior to parole. However, by the time the Parole Commission held Johnson's initial parole hearing on July 2, 1979, Johnson was incarcerated not only for his 1975 counterfeiting convictions, but also for an additional counterfeiting conviction and a conviction for failure to appear for execution of sentence. Thus, the Parole Commission rated Johnson's offense behavior as "Greatest I" severity, apparently pursuant to a provision, included as part of every version of the guidelines since their inception in 1973, that "[i]f an offense behavior involved multiple separate offenses, the severity level may be increased." *See* 44 Fed.Reg. 26547 (May 4, 1979).[4] Given this

---

**3.** The 1976 guidelines listed under the "High" category "Counterfeit currency (passing/possession $20,000–$100,000)." There was no listing for counterfeiting offenses involving more than $100,000, the category which would have been applicable to Johnson. One might assume, however, that since a $100,000 ceiling was placed on such offenses in the High category, counterfeiting offenses involving more than $100,000 would be given the next highest rating, "Very High." Furthermore, the guidelines provided that "[i]f an offense behavior is not listed ..., the proper category may be obtained by comparing the severity of the offense behavior with those of similar offense behaviors listed." 41 Fed.Reg. 37323. The table, as revised slightly in August 1977, listed various "property offenses" involving $20,000–$100,000 as "High," and rated the same offenses when involving more than $100,000 as "Very High"; by analogy, counterfeiting offenses involving more than $100,000 would

have been rated "Very High." *See* 42 Fed.Reg. 39813–14.

**4.** The guidelines have also continuously provided that "especially mitigating or aggravating circumstances in a particular case may justify a decision or a severity rating different from that listed." *See* 38 Fed.Reg. 31942 (Nov. 19, 1973); 28 C.F.R. § 2.20(d) (1980). One group *of commentators has indicated that, between 1973 and 1975, the Board of Parole exercised a substantial amount of discretion in setting offense severity ratings in cases involving multiple offenses or "mitigating or aggravating" circumstances. Yale Project, supra, 84 Yale L.J. at 835–39.*

In its notice to Johnson, the Commission did not advance a specific justification for the "Greatest I" rating. It said simply that

"Your offense behavior has been rated as Greatest I severity because you participated in the manufacture of $146,515.00 in counterfeit currency, you also violated the bail re-

**4**

rating, the guidelines showed a range of 78 to 100 months. Since Johnson's eight-year sentence fell within this range, and since the Commission found that "a decision outside the guidelines" was "not warranted," the Commission ordered, subject to periodic review, that Johnson continue his sentence to expiration.

### III.

■ Pleas of guilty "not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 1468, 25 L.Ed.2d 747 (1970). Federal Rule of Criminal Procedure 11 attempts to effectuate this principle by requiring that judges, prior to accepting a plea of guilty, ensure that the plea is in fact voluntarily and intelligently made. In October 1975, when Johnson's plea was accepted, Rule 11 provided that the court should ascertain that "the plea is made voluntarily with understanding of the charge and the consequences of the plea."

In *Durant v. United States*, 410 F.2d 689 (1st Cir. 1969), we held, contrary to decisions in some circuits, that statutory ineligibility for parole was a "direct consequence" of a guilty plea, of which a defendant should be informed before pleading. *See also Otero-Rivera v. United States*, 494 F.2d 900 (1st Cir. 1974). However, an amendment to Rule 11, effective December 1, 1975, makes clear that a judge is not presently required to convey such information to a defendant prior to accepting a guilty plea. The rule now states explicitly the information of which a defendant should be apprised, including "the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law." Johnson does not contend that he was uninformed as to this information, only

as to information concerning his likely date of release on parole. Since, however, Johnson's plea was entered before the effective date of the 1975 amendment (although he was sentenced after this date), the law in effect under the pre-1975 version of Rule 11 is applicable.

■ Johnson's claim, then, reduces to a contention that he was entitled to be correctly, or at least entitled not to be erroneously, informed, at the time he entered his plea, of the probable date the Commission would exercise its discretion to release him. Implicit in this claim is the proposition that having been informed of the probable range of release dates indicated by guidelines then in effect, this range could not be altered by the Commission pursuant to revised guidelines without invalidating his plea by rendering it not intelligently made.[5]

We need not decide whether in an appropriate case a guilty plea, made in reliance upon an understanding of parole guidelines in effect at the time, would be vitiated by later application of revised guidelines resulting in a significantly enhanced prison term. Even were we to so conclude, this still would not avail Johnson. For Johnson only claims reliance on information given him as to the probable parole consequences that would ensue were he to serve his sentence in normal course. There is no showing he relied upon assumptions about the probable parole consequences of a sentence interrupted by a two-year escape. Johnson had to know when he pleaded that becoming a fugitive would alter his release date. Indeed, someone in his position would surely have suspected that nonappearance would render the 26–32 month range mentioned by his lawyer and the prosecutor totally meaningless. However "intelligent" Johnson's plea premised on proper and normal service of the sentence, he rendered

---

form act by failing to appear in federal court as directed."

5. We have no jurisdiction in this section 2255 proceeding to consider the propriety, under the *ex post facto* clause of the Constitution or otherwise, of the Commission's application of the 1979 guidelines to Johnson's pre-1979 sen-

tences. *United States v. Addonizio*, 442 U.S. 178, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979); *United States v. McBride*, 560 F.2d 7 (1st Cir. 1977); *United States v. DiRusso (DiRusso II)*, 548 F.2d 372 (1st Cir. 1976); *Thompson v. United States*, 536 F.2d 459 (1st Cir. 1976).

any calculus of the parole consequences of his plea irrelevant through his own actions—by deciding not to appear for execution of the sentence.

Indeed, given Johnson's present status, it is far from clear that he would have received different treatment from the Commission even had it relied on the 1975 version of the guidelines. Johnson seems to assume that, using the 1975 guidelines, the Commission would have viewed his two categories of offenses separately, rating his counterfeiting offenses as "High" (indicating a range of 26 to 32 months) and his failure to appear offense as "Low"[6] (indicating an additional range of 10 to 14 months); the Commission would then have set a presumptive release date within a range of 36 to 46 months. These assumptions totally ignore the facts that 1) the 1975 guidelines provided (as did the guidelines that preceded and followed them) that "if an offense behavior involved multiple separate offenses, the severity level may be increased" and that "aggravating circumstances in a particular case may justify a decision or severity rating different from that listed"; 2) the Commission seems to exercise considerable discretion in setting offense severity ratings when multiple offenses are involved, see note 4, supra; and 3) using the 1979 guidelines, which do not differ significantly from the 1975 guidelines in these regards, the Commission did not choose to separate Johnson's counterfeiting and failure to appear convictions for purposes of determining offense severity, but instead considered all four offenses together and set a rating of "Greatest I."[7] It seems likely, then, that the Commission would have treated Johnson's offenses similarly under the 1975 guidelines, and would have imposed an offense behavior rating of "Greatest."[8] The 1975 guidelines provided no specific time ranges for prisoners with a

Greatest rating, but stated simply that time served should be greater than the range indicated under the immediately preceding category—in Johnson's case, greater than 55 months. Johnson now estimates that, factoring in good time credits, he will be released after 70 months. It is thus pure speculation to maintain that the Commission would not have entered a very similar recommendation (i. e., continue to expiration of sentence) using the 1975 guidelines.

We conclude, therefore, that Johnson's guilty plea was voluntary, intelligently made, and entered in compliance with Rule 11.

*Affirmed.*

---

**6.** Johnson does not explain why "failure to appear," an offense not listed in the tables, would have been rated "Low." The Low category did include an offense labelled "Walkaway."

**7.** Johnson maintained before the district court that in so doing the Commission acted improperly. We have no jurisdiction to consider this

contention, see note 5, supra. The point here is simply that we see no reason why the Commission, properly or improperly, would not have acted similarly under the 1975 guidelines.

**8.** The 1975 guidelines made no distinction between "Greatest I" and "Greatest II" offenses.