**Paul E. JOHNSON, Petitioner,**

v.

**UNITED STATES PAROLE COMMISSION; Marion R. Lacy, Warden, F.C.I., Sandstone, Minnesota, Respondents.**

No. Civ. 3–80–672.

United States District Court,
D. Minnesota.

Sept. 23, 1982.

Paul E. Johnson, pro se.

James M. Rosenbaum, U.S. Atty., Joseph T. Walbran, Asst. U.S. Atty., Minneapolis, Minn., for respondents.

## MEMORANDUM AND ORDER

DEVITT, Senior District Judge.

This case is before the court on petitioner's motion for reconsideration of this court's July 15, 1982 affirmance of the Magistrate's Report and Recommendation denying the petition for a writ of habeas corpus. Petitioner's motion is DENIED.

On December 15, 1975 petitioner was sentenced to seven years' imprisonment for violating the federal counterfeiting laws. 18 U.S.C. §§ 471–472. At petitioner's request, execution of the sentence was stayed until January 2, 1976. Petitioner failed to appear on that date and remained a fugitive until he was arrested on August 3, 1978. On October 23, 1978 petitioner pled guilty to failing to appear for execution of his sentence, 18 U.S.C. § 3150, and on November 6, 1978 was sentenced to a one-year prison term, to be served after the counterfeiting sentence. On November 21, 1978 petitioner pled guilty to another counterfeiting charge and was sentenced to five years' imprisonment, to be served concurrently with the seven-year counterfeiting sentence.

Petitioner had his initial parole hearing before a panel of the United States Parole Commission on July 18, 1979. The Commission applied 1979 parole guidelines and recommended that petitioner "continue to expiration" of his aggregated eight-year sentence.

The thrust of petitioner's complaint is that the ex post facto clause was violated at his initial parole hearing because 1979 parole guidelines were applied to offenses committed in 1975 and 1976. Petitioner claims the 1975 guidelines should have been applied. Petitioner claims that under the 1975 guidelines he would have received an earlier presumptive release date.

To establish a violation of the ex post facto clause two elements are required; the law in operation 1) "must apply to events occurring before its enactment;" and 2) "it must disadvantage the offender affected by it." *Weaver v. Graham,* 450 U.S. 24, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1981). The *Weaver* court stated that

the ex post facto prohibition ... forbids the imposition of punishment more severe than the punishment assigned by law when the act to be punished occurred. Critical to relief under the Ex Post Facto Clause is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated.

*Id.* 101 S.Ct. at 695.

When petitioner was evaluated by the Parole Commission on July 18, 1979, he had

been convicted and sentenced for four crimes, three involving counterfeiting occurring in 1975 and one involving petitioner's failure to appear on January 2, 1976 for execution of his sentence.

At the July 18, 1979 hearing, petitioner was assessed under the 1979 guidelines. He was given a salient factor score of 3 (poor parole risk) and an offense severity rating of "Greatest I" "because of multiple separate offenses." United States Parole Commission, Hearing Summary re: Paul Johnson, at 4 (July 18, 1979).

Petitioner apparently contends that when multiple separate offenses are involved the presumptive release dates for *each* offense, independent of the others, should be determined and then these periods should be added together. However, this analysis is contradicted by provisions in the guidelines that have been a part of every version of the guidelines since their inception in 1973, "If an offense behavior involved multiple separate offenses, the severity level may be increased." 28 C.F.R. § 2.20, Adult table, note 4. Section 2.20(d) provides, "especially mitigating or aggravating circumstances in a particular case may justify a decision or severity rating different from that listed." Therefore, it appears that when multiple offenses are involved, only one severity rating with its corresponding release date is assigned, rather than multiple severity ratings with multiple release dates. *See Johnson v. United States,* 650 F.2d 1 (1st Cir. 1981); 28 C.F.R. § 2.20, General Notes (D.), at 92 (1981). Moreover, the Commission exercises "considerable discretion in setting offense severity ratings when multiple offenses are involved." *Johnson,* 650 F.2d at 3 nn. 4, 5.

Until 1978 the highest severity rating under the guidelines was "Greatest." In 1978 this category was split into "Greatest I" and "Greatest II." A comparison of the various categories under the 1979 and 1975 guidelines shows that a "Greatest I" rating under the 1979 guidelines is most comparable to a "Greatest" rating under the 1975 guidelines. *Id.* at 5. There are no presumptive release dates under the 1975

"Greatest" category. Therefore, it cannot be said that the 1979 guidelines, which recommend 78 to 100 months for a "Greatest I" rating with a salient factor score of 3, are more onerous than the 1975 guidelines, which place no limit on the length of incarceration for a "Greatest" rating, regardless of the salient factor score.

■ Because it cannot be said that petitioner's "punishment" under the 1975 guidelines would have been less severe than under the 1979 guidelines and because petitioner had notice in the 1975 guidelines that the severity level may be increased if he engaged in multiple separate offenses, there is no ex post facto violation. Any expectation petitioner may have theoretically had under the 1975 guidelines was nullified by petitioner's own actions—when he decided not to appear for execution of his sentence and remained a fugitive for over two and one-half years.

Petitioner also argues that under the 1975 guidelines he would have received a salient factor score of 4 (fair parole risk) rather than the score of 3 (poor parole risk) that he received under the 1979 guidelines. Although petitioner apparently is correct, a salient factor score is essentially irrelevant under the 1975 "Greatest" category because there are no presumptive release dates for any salient factor score.

Petitioner also argues that events subsequent to his July 18, 1979 hearing, in particular more favorable ratings by the Commission, support his case. However, subsequent events such as this are not pertinent to whether the ex post facto laws were violated at the initial hearing.

Based on petitioner's motion and report to the court, and all the files, records, and proceedings herein, IT IS ORDERED that petitioner's motion for reconsideration be DENIED.