UNITED STATES *v.* UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK ET AL.

No. 527.   Argued April 19–20, 1948.—Decided May 24, 1948.

*Leonard J. Emmerglick* argued the cause for the United States. With him on the brief were *Solicitor General Perlman, Assistant Attorney General Sonnett* and *Robert L. Stern.*

*William Watson Smith* argued the cause for respondents. With him on the brief were *Frank B. Ingersoll, Leon E. Hickman, Charles E. Hughes, Jr.* and *L. Homer Surbeck.*

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

The United States brought a proceeding against the Aluminum Company of America (Alcoa) and others to prevent and restrain certain violations of the Sherman Act. 26 Stat. 209, as amended, 15 U. S. C. §§ 1, 2, 4. After trial the District Court dismissed the complaint. 44 F. Supp. 97. The case came here by appeal, after which we ascertained that due to the disqualification of four Justices to sit in the case, we were without a quorum. Accordingly, we transferred the case to a special docket and postponed further proceedings in it until such time as there was a quorum of Justices qualified to sit in it. 320 U. S. 708. Thereafter Congress amended the statute which provides for a direct appeal to this Court from the District Court in antitrust cases. The Act of June 9, 1944, c. 239, 58 Stat. 272, 15 U. S. C. (Supp. V, 1946) § 29, passed to meet the contingency of the lack of a quorum here, provides: [1]

> "In every suit in equity brought in any district court of the United States under any of said Acts,

---

[1] See H. R. Rep. No. 1317, 78th Cong., 2d Sess.; Sen. Rep. No. 890, 78th Cong., 2d Sess.

260

wherein the United States is complainant, an appeal from the final decree of the district court will lie only to the Supreme Court and must be taken within sixty days from the entry thereof: *Provided, however,* That if, upon any such appeal, it shall be found that, by reason of disqualification, there shall not be a quorum of Justices of the Supreme Court qualified to participate in the consideration of the case on the merits, then, in lieu of a decision by the Supreme Court, the case shall be immediately certified by the Supreme Court to the circuit court of appeals of the circuit in which is located the district in which the suit was brought which court shall thereupon have jurisdiction to hear and determine the appeal in such case, and it shall be the duty of the senior circuit judge of said circuit court of appeals, qualified to participate in the consideration of the case on the merits, to designate immediately three circuit judges of said court, one of whom shall be himself and the other two of whom shall be the two circuit judges next in order of seniority to himself, to hear and determine the appeal in such case and it shall be the duty of the court, so comprised, to assign the case for argument at the earliest practicable date and to hear and determine the same, and the decision of the three circuit judges so designated, or of a majority in number thereof, shall be final and there shall be no review of such decision by appeal or certiorari or otherwise.

"If, by reason of disqualification, death or otherwise, any of said three circuit judges shall be unable to participate in the decision of said case, any such vacancy or vacancies shall be filled by the senior circuit judge by designating one or more other circuit judges of the said circuit next in order of seniority

and, if there be none such available, he shall fill any such vacancy or vacancies by designating one or more circuit judges from another circuit or circuits, designating, in each case, the oldest available circuit judge, in order of seniority, in the circuit from which he is selected, such designation to be only with the consent of the senior circuit judge of any such other circuit.

"This Act shall apply to every case pending before the Supreme Court of the United States on the date of its enactment."

Thereupon we certified the cause to the Circuit Court of Appeals for the Second Circuit. 322 U. S. 716. That court heard the case, sustained charges of monopoly against Alcoa, reversed the judgment of dismissal, and remanded the cause for further proceedings not inconsistent with its opinion. 148 F. 2d 416. It left open the question of the remedies to be applied. Nearly five years had passed since the evidence was closed, war had intervened, new plants had been constructed by the government, and their disposition under the Surplus Property Act of 1944, 58 Stat. 765, 50 U. S. C. A. § 1611, would affect the competitive situation in the ingot market. Petitioner had asked for Alcoa's dissolution. But that question was deferred until Alcoa's position in the industry after the war was known. 148 F. 2d pp. 445–447.

On remand of the cause the District Court entered its judgment on the mandate on April 23, 1946. It enjoined certain practices and retained jurisdiction of the cause until after the Surplus Property Administrator shall have proposed a plan for disposition of the government-owned aluminum plants or facilities, in order that the Attorney General might institute proceedings for the dissolution or partial dissolution of Alcoa or for the enforcement of such plan if it will establish competitive conditions

in the industry or for such other relief as will establish them; "and for the purpose of enabling Aluminum Company to apply to this court for a determination of the question whether it still has a monopoly of the aluminum ingot market in the United States."

Pursuant to the quoted provision Alcoa filed a petition in the District Court praying that a final judgment be entered adjudicating that it no longer has a monopoly of the aluminum ingot market in the United States and that as a consequence competitive conditions in the industry have been restored. The motion of the United States to dismiss the petition was denied and the question whether Alcoa still had a monopoly was set for trial. The United States thereupon filed a petition for a writ of mandamus in the Circuit Court of Appeals to require the district judge to vacate so much of its judgment of April 23, 1946, as reserved jurisdiction to enable Alcoa to apply for a determination whether it still has a monopoly, and to dismiss the petition of Alcoa.

The Circuit Court of Appeals dismissed the petition for mandamus. 164 F. 2d 159. The case is here on a petition for a writ of certiorari which we granted to settle the important question under the Act.

The Circuit Court of Appeals concluded that its power to issue the writ of mandamus exists only as an incident to its jurisdiction to entertain an appeal from a judgment of the District Court. It read the Act of June 9, 1944, as confining its jurisdiction to the determination of the appeal which it had heard under our certificate. Moreover, control over its mandate ended with the end of the term during which the mandate went down.[2] The court therefore concluded that it had no power to issue the writ.

_____

[2] The term of court in which the mandate issued expired September 30, 1945, on which day the court lost power to change it except as to matters of form. See *Fairmont Creamery Co.* v. *Minnesota,* 275 U. S. 70.

We put to one side the question whether another appeal in the case would be decided by the Circuit Court of Appeals or by this Court, now that there is a quorum of Justices qualified to sit in it. No matter how that question were resolved, it is our opinion that the Circuit Court of Appeals has jurisdiction in this mandamus proceeding.

Section 262 of the Judicial Code, 28 U. S. C. § 377, provides that the federal courts "shall have power to issue all writs not specifically provided for by statute, which may be necessary for the exercise of their respective jurisdictions, and agreeable to the usages and principles of law." It was early recognized that the power to issue a mandamus extended to cases where its issuance was either an exercise of appellate jurisdiction or in aid of appellate jurisdiction. See *Marbury* v. *Madison,* 1 Cranch 137, 175; *Ex parte Crane,* 5 Pet. 190. That power protects the appellate jurisdiction which might be otherwise defeated and extends to support an ultimate power of review, though it not be immediately and directly involved. *McClellan* v. *Carland,* 217 U. S. 268. *Ex parte United States,* 287 U. S. 241, 246. In that category will often fall cases involving issuance of mandamus requiring the lower court to enforce the judgment of the appellate court. *Delaware, L. & W. R. Co.* v. *Rellstab,* 276 U. S. 1, 5.

But the fact that mandamus is closely connected with the appellate power does not necessarily mean that the power to issue it is absent where there is no existing or future appellate jurisdiction to which it can relate. Cf. *Chickaming* v. *Carpenter,* 106 U. S. 663, 665. *In re Washington & Georgetown R. Co.,* 140 U. S. 91, is a case in point. The lower court in violation of the mandate of this Court allowed interest on a judgment. The amount of the interest was too small to be the subject of a writ of error from this Court. It was held that mandamus

was the proper remedy to enforce compliance with the mandate. And see *City Bank* v. *Hunter*, 152 U. S. 512, 515. It is, indeed, a high function of mandamus to keep a lower tribunal from interposing unauthorized obstructions to enforcement of a judgment of a higher court. *Delaware, L. & W. R. Co.* v. *Rellstab, supra.* That function may be as important in protecting a past exercise of jurisdiction as in safeguarding a present or future one. When Congress authorized "the case" to be certified to the Circuit Court of Appeals, it excepted none of the powers of that court which might be brought to bear on the litigation. Those powers include the power to issue mandamus to protect the mandate of the Circuit Court of Appeals, even though we assume *arguendo* that all further appeals in the case would come here.

The Circuit Court of Appeals seems to have been influenced to the other view by the feeling that the question presented by the mandamus cuts so wide a swathe in the litigation that it should hold its hand. Its position was that the issue raised by the petition for mandamus had an important relation to the reserved problem of dissolution, that the judgment on dissolution would in its view eventually come here on appeal, that any ruling by it on the mandamus would therefore limit our freedom to deal with the dissolution issue as, if, and when it got here.

Those considerations may be of large importance in the totality of this proceeding, once we accept the premise of the Circuit Court of Appeals that it will have nothing to do with any other appeals in the case. But they do not seem to us germane to the question whether the Circuit Court of Appeals has the power to enforce obedience to its mandate. We think the Act of June 9, 1944, gave the Circuit Court of Appeals the full amplitude of judicial power to deal with the cause which we certified. That power does not contract with the importance or gravity

of the question presented. The power to compel obedience with the mandate turns on whether the lower court has obstructed enforcement of it, not on the collateral repercussions which enforcement may entail.

*Reversed.*

MR. JUSTICE MURPHY and MR. JUSTICE JACKSON took no part in the consideration or decision of this case.

MR. JUSTICE FRANKFURTER, concurring.

When this case originally came here by appeal, an extraordinarily rare, if not unique, situation in the history of the Court precluded its consideration for want of a qualified quorum. The impasse was met by the special jurisdictional Act of June 9, 1944, 58 Stat. 272, 15 U. S. C. § 29. For reasons that seem to me too obvious to need spelling out, that Act should be interpreted as transferring to the Circuit Court of Appeals *the case* and not merely a stage in its disposition if the Congressional language reasonably permits the Act to be so read. Since it can be so read I do so read it and conclude that the whole appellate process in this case was vested in the Circuit Court of Appeals, regardless of the piecemeal exercise of that process. I find such a construction of the Act of June 9, 1944, freer from difficulties than some of the technical questions pertaining to mandamus that arise on the view taken by the Court.