**UNITED STATES of America,
Respondent, Appellant,**

v.

**Anthony J. DiRUSSO, Petitioner,
Appellee.**

**No. 76–1291.**

United States Court of Appeals,
First Circuit.

Argued Sept. 13, 1976.

Decided Dec. 27, 1976.

William A. Brown, Asst. U.S. Atty., Chief, Civ. Div., with whom James N. Gabriel, U.S. Atty., Boston, Mass., was on brief, for respondent-appellant.

Ann Lambert Greenblatt, Newton, Mass., with whom Harvey A. Silverglate, Boston, Mass., Charles A. Clifford, Charlestown, Mass., and Silverglate, Shapiro & Gertner, Boston, Mass., were on brief, for petitioner-appellee.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

COFFIN, Chief Judge.

This is the second time we have considered issues arising from the application of the United States Parole Commission's "paroling policy guidelines" to the sentence being served by Anthony DiRusso. *See United States v. DiRusso*, 535 F.2d 673 (1st Cir. 1976) (*DiRusso I*).

In February, 1975, over a year following the promulgation of the Parole Commission's parole policy guidelines, DiRusso pleaded guilty to armed bank robbery in the federal district court for the District of Massachusetts. After considering a presentence report that explicitly disclosed that DiRusso would probably serve between 20 and 27 months if he were sentenced under the Federal Youth Corrections Act (FYCA), 18 U.S.C. § 5005, *et seq.*,[1] the district judge sentenced him under § 5010(b) of that act. DiRusso was sent to the Federal Correctional Institution at Ashland, Kentucky in June of 1975. After serving some eight months of his sentence, he learned that he probably would not be released until he had served 27 months.

In February, 1976, DiRusso filed a motion to vacate his sentence under 28 U.S.C. § 2255. He alleged, first, that he was not receiving "treatment" as required by § 5010(b) and, second, that the application of the parole guidelines was inconsistent with the sentencing judge's understanding that parole eligibility would depend solely upon his response to treatment. The sentencing judge indicated that he had "a responsibility to correct a sentence which was imposed under a misapprehension as to [its] potential impact." Because he found preliminarily that DiRusso's allegations were true, he released DiRusso, whom he had brought to the jurisdiction pursuant to a writ of *habeas corpus ad testificandum*, to bail pending the ultimate decision on the merits. The government then sought relief from this court, and we set aside the district court's action, ordering that the suit be dismissed for want of jurisdiction. *See DiRusso I*.

Following the issuance of our mandate, the district court dismissed DiRusso's first § 2255 motion for want of jurisdiction. Immediately thereafter, however, DiRusso filed a second § 2255 motion. This time he left no doubt but that he was attacking the legality of the sentence on the ground that the district court had committed fundamental errors of fact in imposing it. The district judge believed this served to distinguish *DiRusso I*, which we had characterized as essentially a challenge to the "execution" of the sentence, and he again released DiRusso on bail, finding preliminarily that he had so totally misconceived the effect of the sentence that it was subject to collateral attack under § 2255. He specifically stated that he had not been aware that the parole guidelines would apply to FYCA sentences and that he would have imposed an entirely different sentence if he had been so aware.

The government again seeks relief in this court. It asserts that *DiRusso I* and our more recent *Thompson v. United States*, 536 F.2d 459 (1st Cir. 1976) conclusively establish that the district court lacked the power to revise DiRusso's sentence because of its misapprehension as to the effect of the parole guidelines, and it requests that we set aside the orders which have prevented the government from executing the judgment of conviction.

---

1. The report stated DiRusso would probably serve between 26 and 36 months if he were sentenced as an adult.

■ We are met at the outset with a challenge to our jurisdiction. We need not consider DiRusso's claim that there is no basis for the exercise of appellate jurisdiction. *Compare Glynn v. Donnelly*, 470 F.2d 95, 96–97 n. 1 (1st Cir. 1972) *with Woodcock v. Donnelly*, 470 F.2d 93 (1st Cir. 1972). In both *Glynn* and *Woodcock*, we exercised our supervisory mandamus jurisdiction under 28 U.S.C. § 1651, *see In re Arvedon*, 523 F.2d 914 (1st Cir. 1975), to review district court orders denying bail to *habeas* claimants. Although DiRusso suggests that these cases are distinguishable, we can perceive no reason why the government, whose substantial interest in the execution of its judgment has, for the time being, been completely frustrated, *cf. Glynn v. Donnelly, supra* at 98, should not here have the same right to review as a *habeas* claimant who has been denied bail. The Fifth Circuit has routinely reviewed the government's claims in such cases. *See Calley v. Callaway*, 496 F.2d 701, *rehearing en banc denied*, 497 F.2d 1384 (5th Cir. 1974). While we generally follow the Fifth Circuit in cases such as this, we will confine such review to cases presenting a substantial issue regarding the district court's authority to act.

On the merits, we agree that *DiRusso I* and *Thompson*, which held that § 2255 did not permit revision of a sentence on the ground that the application of pre-existing parole guidelines frustrated the sentencing judge's intent, are essentially controlling. Because the district court had a plausible basis for believing these decisions distinguishable, we will briefly state the bases for these decisions and explain why they control.

■ In both adult and FYCA sentences, the sentencing judge commits the criminal defendant to the Attorney General, 18 U.S.C. §§ 4082(a), 5010(b), and the decision whether to release a prisoner prior to the expiration of his sentence is committed by law to the discretion of the Parole Commission. *Id.* §§ 4201, 5005. Although judges are frequently concerned about the post-conviction treatment of the defendants they sentence, they have no jurisdiction to super-vise, control, or second guess the decisions of the Parole Commission. *See United States v. White*, 540 F.2d 409, 411 (8th Cir. 1976). The exclusive means of challenging the Parole Commission's actions is to bring a § 2241 action in the district of confinement, an action which will rarely be heard by the sentencing judge and in which, for better or worse, the sentencing judge's intent in most circumstances is not material. *See Thompson v. United States, supra* at 460 and cases cited.

■ Although § 2255 gives the sentencing judge the power to vacate illegal sentences or sentences which are "otherwise subject to collateral attack", the division of responsibility between the sentencing court and the Parole Commission would be skewed if a sentence could be vacated whenever the Parole Commission exercised its discretion so that a particular prisoner was to be confined for a substantially longer period than the sentencing judge had contemplated. It is for this reason that we held in *DiRusso I* and *Thompson* that the district court's misapprehension of the manner in which the Parole Commission would exercise its discretion did not provide the basis for a collateral attack on the sentence under § 2255. Although we stated in both cases that the challenges were to the "execution" of the sentence, it is immaterial that the district court is able to characterize the attack differently. A district court's error in anticipating the manner in which the Parole Commission applies its parole criteria is not a basis for collateral attack on a sentence, at least when the parole criteria were known to bench and bar at the time of sentencing.

■ Both DiRusso and the district court note that § 2255 is often a vehicle for revising sentences that were predicated upon errors of the sentencing judge. It permits collateral attacks on sentences which were based upon fundamental errors in evaluating the criminal defendant. *See United States v. Tucker*, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972); *Townsend v. Burke*, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948); *United States v. Mal-*

*colm*, 432 F.2d 809, 815–16 (2d Cir. 1970). Section 2255 has also been held to permit collateral attacks on sentences which were based upon the sentencing judge's misconception of his legal obligations or options. *See United States v. Lewis*, 392 F.2d 440 (4th Cir. 1967) (sentencing judge erroneously believed he was under an obligation to impose the maximum sentence); *Robinson v. United States*, 313 F.2d 817 (7th Cir. 1963) (district judge imposed maximum sentence in the erroneous belief that defendant would be eligible for parole when statute precluded parole release). But these cases are distinguishable from one in which the district court allegedly committed a fundamental error in predicting when the Parole Commission was likely to exercise its discretion to release a criminal defendant. Although the date of a criminal defendant's likely release on parole is a factor a district judge legitimately considers in imposing a sentence, the parole decision is committed to a separate tribunal. To permit the district court to revise a sentence whenever the Parole Commission's decision was inconsistent with his intent would divest the Commission of its discretionary power under the law, and defeat the objectives of placing the parole decision in a separate body.

Thus far, we have spoken only in general terms, without acknowledging that this case involves the application of the recently promulgated paroling policy guidelines. Although these were an attempt to codify the manner in which the Parole Commission exercises its discretion, we take notice of the fact that, in some instances, they fundamentally changed the rules regarding parole release. It is for this reason that several courts have permitted collateral attacks under § 2255 on sentences when the effect of the parole guidelines was to substantially change the import of the sentence. *See United States v. Salerno*, 538 F.2d 1005 (3d Cir. 1976); *Kortness v. United States*, 514 F.2d 167 (8th Cir. 1975); *cf. United States v. Slutsky*, 514 F.2d 1222 (2d Cir. 1975). In these cases, however, the sentences that were collaterally attacked had been imposed either prior to or contemporaneously with the promulgation and general awareness of the paroling policy guidelines. The Eighth Circuit has now expressly held that § 2255 motions are proper only under these circumstances and that the normal rules of finality apply in instances in which the sentence was imposed after the parole guidelines were generally known to bench and bar. *See United States v. Clinkenbeard*, 542 F.2d 59 (8th Cir. 1976).[2]

██ Even if we were to follow the Eighth Circuit and adopt a limited exception to normal finality principles, it would not aid DiRusso. His sentence was imposed more than a year after November 18, 1973, the day the paroling policy guidelines were published, and at a time when the district court was concededly aware of their existence. How the guidelines would be applied

2. When applicable, the Eighth Circuit's limited exception to the traditional rule operates to ensure that a criminal defendant has one, and often only one, opportunity to have the sentencing judge focus on the applicable parole criteria when he makes a sentencing determination. As to sentences imposed before the promulgation of the guidelines, the § 2255 motion supplies the opportunity. As to sentences imposed thereafter, the opportunity occurs at the sentencing hearing and during the 120 day period in which there may be a motion to reduce the sentence under Fed.R.Crim.P. 35.

It is not clear to us that the Eighth Circuit's exception to the normal principles of finality is needed to protect the interests that are at stake. If the application of the parole guidelines to a sentence imposed before their promulgation appears clearly inconsistent with the individualized sentence, it is possible that a § 2241 action could be maintained in the district of confinement and would result in an order prohibiting the "retroactive" application of the guidelines. In this connection, we note that courts have held that application of the parole guidelines to any FYCA sentences, which like DiRusso's, were imposed prior to the recent 1976 amendments to the FYCA, is improper. *See Fletcher v. Levi*, 425 F.Supp. 918 (D.D.C.1976).

Nevertheless, and despite our dictum in *Thompson v. United States, supra*, 536 F.2d at 460 n. 1, to the effect that we would not follow the Eighth Circuit, we would not, without further reflection, deem ourselves precluded from adopting its approach in an appropriate case.

to DiRusso's FYCA sentence was clearly disclosed in the presentence report. Although we accept, for present purposes, the district court's representation that it did not know the guidelines would apply to a FYCA sentence, we do not believe this fact is sufficient to call for an exception to the normal principles of finality.[3] Even assuming the district judge was unaware of the effect of the guidelines, DiRusso's counsel should have ascertained the probable length of DiRusso's confinement under the guidelines and, had it seemed appropriate to do so, could have focused the sentencing judge's attention on that fact either at the sentencing hearing or in a timely Rule 35 motion to reduce DiRusso's sentence. *See* Fed.R.Crim.P. 35. In a case in which the applicability of the guidelines should have been known to bench and bar at the time of sentencing, we hold that Rule 35 provides the exclusive means of relief for the criminal defendant. Although this rule may not yield entirely satisfactory results in this case and although we sympathize with the district court's desire to correct its error, we think our holding today is necessary to preserve the separate functions of the Parole Commission and the sentencing judge.

Not only is such action as that taken by the district court unnecessary to provide a realistic remedy in the generality of cases, but any departure from a bright line test seems to us an unwarranted and costly incursion into a judge's subjective intent. Were it always open to a prisoner to test a judge's intention at the time of sentencing in the light of subsequent actions of the Parole Commission, there would predictably be a flood of pro se and other petitions, accepting this invitation. *See Jacobson v. United States,* 542 F.2d 725, at 727 (8th Cir. 1976). We would also foresee problems for both the sentencing and the reviewing courts. The sentencing judge would have to reconstruct its state of mind in sentencing in a particular case, perhaps one remote in time. And if the reviewing court is not to accept without question the sentencing

judge's reconstruction of his earlier intent, it would find itself in an awkward position in determining whether and why that reconstruction was unreasonable.

Although we hold that the district court's misapprehension of the applicability of the parole guidelines was not grounds for § 2255 relief, a further comment is in order. As the result of the good faith actions of the district court, DiRusso has been free on bail since March, 1976. During this period he may have demonstrated the extent to which his period of confinement served to rehabilitate him and the extent to which he presently is a danger to society. In view of this possibly pertinent data, we would think the Parole Commission might schedule a parole hearing at the earliest possible time to reconsider the application of its guidelines in light of DiRusso's record while he has been free on bail. We urge, but do not order, the Parole Commission to do so. *Cf. United States v. White,* 540 F.2d at 412.

*The District Court shall dismiss DiRusso's most recent § 2255 motion and, assuming that no further proceedings are pending in the district requiring DiRusso's presence and that DiRusso is not released on parole, shall take whatever steps are necessary to arrange for DiRusso's return to the appropriate correctional facility.*

McENTEE, Circuit Judge, concurring.

While I agree that the substantive issues presented by *DiRusso* II differ in no material respect from those in *DiRusso* I, I do not believe that we should suggest at this time that mandamus review may be routinely afforded the government in *habeas* cases "presenting a substantial issue regarding the district court's authority to act." Rather, I believe that the mandamus relief available in *DiRusso* I and II rests on more traditional grounds.

Although the parties and the court in *DiRusso* I did not squarely address the

---

**3.** We observe that if this fact were sufficient to bring a case within the Eighth Circuit's rule, we would be placed in the awkward position of having to consider the plausibility of a district court's failure to be aware of something that was disclosed in a presentence report.

question of *our* jurisdiction, we concluded on the merits that the *district court* lacked jurisdiction over the appellee's claim for § 2255 relief. The relief granted the United States in *DiRusso* I may therefore be viewed retroactively as mandamus exercised "to confine an inferior court to a lawful exercise of its prescribed jurisdiction . . . ." *Roche v. Evaporated Milk Ass'n,* 319 U.S. 21, 26, 63 S.Ct. 938, 941, 87 L.Ed. 1185 (1943). *See In re Melvin,* 546 F.2d 1 (1st Cir. 1976). In any event, *DiRusso* I is *res judicata* and the propriety of our having granted relief in that case is no longer directly at issue.

In the present case, *DiRusso* II, the facts and the legal issues are not different in any material respect from *DiRusso* I. And the bail order issued by the district court in the present case frustrates our mandate in *DiRusso* I which required dismissal of the § 2255 petition. Therefore, I would hold that our exercise of the mandamus power in this case rests on the settled principle that mandamus will issue to correct the actions of a district court which undermine or frustrate the mandate of an appellate court in the same case. *See United States v. United States District Court,* 334 U.S. 258, 263–64, 68 S.Ct. 1035, 92 L.Ed. 1351 (1948); *Delaware, L. & W. R. Co. v. Rellstab,* 276 U.S. 1, 5, 48 S.Ct. 203, 72 L.Ed. 439 (1928); *City Bank of Fort Worth v. Hunter,* 152 U.S. 512, 515, 14 S.Ct. 675, 38 L.Ed. 534 (1894); *In re Washington & G. R. Co.,* 140 U.S. 91, 94–95, 11 S.Ct. 673, 35 L.Ed. 339 (1891); *Yablonski v. UMW,* 147 U.S.App.D.C. 193, 454 F.2d 1036, 1038–39 & nn. 13, 14 (1971), *cert. denied,* 406 U.S. 906, 92 S.Ct. 1609, 31 L.Ed.2d 816 (1972); *Federal Home Loan Bank v. Hall,* 225 F.2d 349, 385 n.12 (9th Cir. 1955), *appeal dismissed,* 351 U.S. 916, 922, 76 S.Ct. 709, 100 L.Ed. 1449 (1956). In view of the narrow bases available for the exercise of mandamus in *DiRusso* I and II, I would not reach the question of what other circumstances call for the exercise of mandamus power at the government's behest for review of bail and other interlocutory orders in *habeas* cases. *See In re United States,* 540 F.2d 21, 23 (1st Cir. 1976).