In re Donna VIZCAINO, John R. Waite, Mark Stout, Geoffrey Clubert, Lesley Stuart, Thomas Morgan, Elizabeth Spokoiny and Larry Spokoiny, and the class they represent, Plaintiffs–Petitioners,

v.

UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF WASHINGTON, Respondent,

Microsoft Corporation and its pension and welfare benefits plans, Defendants/Real Parties in Interest.

Donna Vizcaino; John R. Waite; Mark Stout; Geoffrey Culbert; Lesley Stuart; Thomas Morgan; Elizabeth Spokoiny; Larry Spokoiny, Plaintiffs–Appellants,

v.

Microsoft Corporation, and its health and benefits plans: Health Benefit Plan, Life Insurance Plan, Short-term and Long-term Disability Plans, and Savings (401K) Plan, Defendant–Appellee.

Nos. 98–71388, 99–35013

United States Court of Appeals, Ninth Circuit.

May 12, 1999.*

As Amended June 10, 1999.

---

* The panel unanimously finds this case suitable for decision without oral argument.    Fed.    R.App.P. 34(a) and 9th Cir.R. 34–4(a)(2).

Stephen K. Strong and David F. Stobaugh, and Brian J. Waid, Bendich, Stobaugh & Strong, Seattle, Washington, for appellants-petitioners-plaintiffs.

James D. Oswald and Michael P. Monaco, Song Oswald & Mondress, Seattle, Washington, Theodore O. Rogers, Jr., Sullivan & Cromwell, New York City, and Margaret K. Pfeiffer, Richard H. Sauer, and Joseph J. Matelis, Sullivan & Cromwell, Washington, DC, for appellee-real party in interest.

Petition for Writ of Mandamus to the United States District Court for the Western District of Washington. D.C. No. CV–93–00178–CRD.

Appeal from the United States District Court for the Western District of Washington; John C. Coughenour, District Judge, Presiding. D.C. No. CV–93–0178C. Order Issued by Carolyn D. Dimmick, District Judge.

Before: REINHARDT and HAWKINS, Circuit Judges, and SCHWARZER,** Senior District Judge.

## ORDER

The Court is of the unanimous opinion that the facts and legal arguments are adequately presented in the briefs and rec-

** The Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation.

ord and the decisional process would not be significantly aided by oral argument.

Therefore, this matter is ordered submitted on the briefs and record without oral argument on Wednesday, May 12, 1999, in San Francisco. Fed.R.App.P. 34(a); 9th Cir.R. 34–4(a)(2).

## OPINION

SCHWARZER, Senior District Judge.

In our prior opinions in this litigation, we held that, as common law employees, the members of a class certified by the district court were entitled to participate in Microsoft's tax-qualified Employee Stock Purchase Plan ("ESPP") even though they had been told when hired that they were ineligible for such benefits and had signed contracts disclaiming them. *See Vizcaino v. Microsoft Corp.,* 97 F.3d 1187 (9th Cir.1996) ("*Vizcaino I*"), *aff'd,* 120 F.3d 1006 (9th Cir.1997) (en banc) ("*Vizcaino II*"). The certified class had been defined by the district court to include "[a]ll persons employed by Microsoft Corporation ... who are denied employee benefits because they are considered independent contractors or employees of third-party employment agencies, but who meet the definition of employees of Microsoft Corporation under the common law." *Vizcaino I,* 97 F.3d at 1190 n. 1. We reversed the district court's judgment for Microsoft and remanded for determination of "[a]ny remaining issues regarding the rights of a particular worker." *Vizcaino II,* 120 F.3d at 1015. On remand, the district court revised its prior class definition to limit the class to workers who worked for Microsoft as independent contractors between 1987 and 1990 either in positions that the Internal Revenue Service (IRS) had reclassified as in fact being common law employee positions, or in positions that Microsoft contemporaneously had voluntarily converted to temporary agency employees. It held those workers to be eligible for employee benefits for work done while independent contractors and for work subsequently performed by

them in the same position as temporary employees hired through a temporary employment agency. The district court's revised class definition excludes (1) all other temporary employees hired into a position subsequent to its reclassification or conversion, and (2) all other persons who worked for Microsoft as common law employees. We must decide whether the district court's order fails to carry out this court's mandate.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The relevant facts are set forth in detail in our prior opinions. We summarize them here only to the extent necessary for this disposition.

Microsoft, in addition to having regular employees, has utilized the services of other workers whom it classified as independent contractors (sometimes called freelancers) or temporary agency employees (also called temps). Following a federal employment tax examination in 1990, the IRS determined that Microsoft had misclassified workers in various positions occupied by independent contractors and that services performed by workers in the specified positions constituted an employer-employee relationship. In response to the IRS ruling, Microsoft offered some of the workers in reclassified positions jobs as regular employees. Most of the workers, however, were given the option to "convert" to temps or lose their working relationship with Microsoft. In addition, Microsoft voluntarily "converted" independent contractors in other positions to temps. The temporary employment agency "payrolled" these workers but in other respects the workers' relationship with Microsoft remained essentially unchanged. In the years following the reclassification and conversion, Microsoft utilized the services of numerous temps.

Plaintiffs, who were formerly independent contractors, brought this action on behalf of a class of persons employed by

Microsoft who met the definition of employees under the common law but who were denied employment benefits because Microsoft considered them independent contractors or employees of third-party employment agencies. Of the various employee benefits sought by plaintiffs, only the ESPP remains at issue. Microsoft denied liability because each of the workers—though conceded to be common law employees—had signed an Independent Contractor Agreement which expressly provided that each independent contractor was responsible for his or her own benefits. The district court granted Microsoft's motion for summary judgment on two grounds: First, because the terms of the agreement barred the claim, and, second, because the terms of the ESPP had not been communicated to the workers and therefore could not have become a part of their contract.

We reversed, holding that through its express incorporation of § 423 of the Internal Revenue Code, *see* 26 U.S.C. § 423 (1994), which requires that qualifying stock purchase plans permit all common law employees to participate, Microsoft's ESPP extended eligibility to all common law employees. *See Vizcaino I*, 97 F.3d at 1197. The plaintiff class was therefore afforded the same options to acquire stock as all other employees. *See id.* We remanded for "the determination of any questions of individual eligibility for benefits that may remain following issuance of this opinion and for calculation of the damages or benefits due the various class members ." *Id.* at 1200; *see also Vizcaino II*, 120 F.3d at 1015 ("Any remaining issues regarding the rights of a particular worker in the ESPP and his available remedies must be decided by the district court upon remand.").

On remand, the district court, on February 13, 1998, issued its "Order Regarding Scope of Remand." It denied Microsoft's motion for clarification of the composition of the class, rejecting its contention that the class definition excluded those plaintiffs who were temps and whose claims arose post-conversion (some but not all of whom had worked as independent contractors pre-conversion). The court concluded that "the plaintiff class will remain as defined in its original certification order [of July 21, 1993] until the issue of whether post-conversion plaintiffs are common law employees is presented."

Following the February 13 order, Microsoft renewed its motion to amend the class certification, asking the court to "certify subclasses for the question of who is a common law employee." By order of July 15, 1998, the district court denied Microsoft's motion but "clarified" the class definition, limiting the class to

all Microsoft workers who, like all the named plaintiffs, worked as independent contractors between 1987 and 1990 and whose positions were reclassified as employee positions after the IRS reviewed them. This ... includes the claims brought by the same workers for their work after 1990, when many of them, including four named plaintiffs, were transferred to temporary employment agencies. This is the scope of the plaintiff class.

The court explained that the class had to be clarified because it could only include "the named plaintiffs and those similarly situated, both before and after conversion to temporary employment." The new definition excluded from the class other groups of potential claimants who were not reclassified by the IRS or converted by Microsoft, i.e., temps hired post-conversion into reclassified or converted positions, and all other common law employees not treated as such by Microsoft.

The July order also granted partial summary judgment for plaintiffs (it is unclear whether the order included only named plaintiffs or also the members of the redefined class). Based on Microsoft's concession, the court found these plaintiffs to have been common law employees while working as independent contractors in positions later reclassified by the IRS. In addition, it found that most plaintiffs who

had subsequently been converted into temps were also common law employees entitled to ESPP participation during their time as temps. The court reasoned that the issue is "not *whether* a worker is an employee or an independent contractor; the question is *which* company is the workers' employer (Microsoft or a temporary agency)." Using a five-factor test it had devised (considering recruitment, training, duration of employment, right to assign additional work, and control over the relationship between worker and agency) the court found that Microsoft, not the temporary agency, employed these workers.

Following plaintiffs' motion for reconsideration, the district court on October 26, 1998, issued a further "Order Regarding Motion to Revise," granting the motion in part and denying it in part. The court rejected plaintiffs' contention that it lacked authority under Rule 23 of the Federal Rules of Civil Procedure to modify the class at this stage in the litigation, citing the existence of "unusual circumstances." It went on to reject plaintiffs' contention that class membership should include all workers who ever worked in a *position* that was held by an independent contractor and then reclassified by the IRS or contemporaneously converted by Microsoft. The court found that "[p]laintiffs are mistaken to focus on the ... positions. A worker's position is not dispositive, and in most cases irrelevant, to the legal question presented," which the court defined as whether the worker is a common law employee of Microsoft or of a temporary agency. On that basis, plaintiffs' motion for summary judgment in favor of any employees who worked in a converted position was denied. In rejecting plaintiffs' motion, the court reaffirmed its July ruling limiting the class "to the IRS-reclassified independent contractors and any work by the same workers in the same position as converted 'temps'." The court did, however, include in the class workers who were independent contractors before becoming temps and were converted to temporary agencies voluntarily by Microsoft, i.e., who

were not reclassified by the IRS but were contemporaneously converted by Microsoft.

The court acknowledged that the effect of its modification of the class, limiting membership to "a particular group of Microsoft workers, who share distinct circumstances with the named plaintiffs," was to drastically reduce it to "only a sliver of Microsoft's contingent (or non-employee) workforce." By order of December 9, 1998, the court denied plaintiffs' motion to add named plaintiffs as class representatives but allowed "workers who claim to have been misclassified common law employees of Microsoft, and to have been wrongly excluded from benefits, [to] intervene in this action." Each of those workers would, however, have to demonstrate that he or she was a common law employee of Microsoft.

Plaintiffs then moved for a permanent injunction requiring Microsoft to immediately allow all common law employees to participate in the ESPP. The district court denied the motion by order of December 22, 1998, on two grounds: (1) With respect to those workers who had been excluded from the class, plaintiffs had failed to demonstrate "actual success on the merits," and (2) with respect to the named plaintiffs and those they represent, their legal remedies are adequate. Plaintiffs have taken an interlocutory appeal from this order, which is also pending before this panel.

Plaintiffs now petition for mandamus under the All Writs Act, 28 U.S.C. § 1651 (1994), to enforce this court's mandate in *Vizcaino I* and *II*. PB 15–20. They ask that the district court's orders of July 15 and October 26, 1998, reducing the plaintiff class be vacated and the original class definition reinstated. We hold that we have jurisdiction and grant the petition.

## II. EXERCISE OF MANDAMUS JURIS-DICTION

■ The All Writs Act provides that "[t]he Supreme Court and all courts estab-

lished by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a) (1994). The traditional office of the writ of mandamus is to " 'confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so.' " *Will v. United States*, 389 U.S. 90, 95, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967) (quoting *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 26, 63 S.Ct. 938, 87 L.Ed. 1185 (1943)). Thus, when a lower court obstructs the mandate of an appellate court, mandamus is the appropriate remedy. *See United States v. United States Dist. Ct.*, 334 U.S. 258, 263–64, 68 S.Ct. 1035, 92 L.Ed. 1351 (1948). The justification for mandamus in such circumstances is twofold. First, inferior courts' disregard of appellate mandates "would severely jeopardize the supervisory role of the courts of appeals within the federal judicial system." *In re Chambers Dev. Co.*, 148 F.3d 214, 224 (3d Cir.1998); *see also Citibank, N.A. v. Fullam*, 580 F.2d 82, 87 (3d Cir.1978). Second, as a policy matter, litigants who have proceeded to judgment in higher courts "should not be required to go through that entire process again to obtain execution of the judgment." *General Atomic Co. v. Felter*, 436 U.S. 493, 497, 98 S.Ct. 1939, 56 L.Ed.2d 480 (1978).

█ Mandamus to compel an inferior court to follow an appellate mandate is closely related to the doctrine of law of the case. The Supreme Court long ago emphasized that when acting under an appellate court's mandate, an inferior court "is bound by the decree as the law of the case; and must carry it into execution, according to the mandate. That court cannot vary it, or examine it for any other purpose than execution." *In re Sanford Fork & Tool Co.*, 160 U.S. 247, 255, 16 S.Ct. 291, 40 L.Ed. 414 (1895); *see also Cowgill v. Raymark Indus., Inc.*, 832 F.2d 798, 802 (3d Cir.1987) (law of the mandate, also called law of the case, embodies the principle that

on remand "litigants should not be permitted to relitigate issues that they have already had a fair opportunity to contest"); *Firth v. United States*, 554 F.2d 990, 993 (9th Cir.1977) ("When a case has been decided by an appellate court and remanded, the court to which it is remanded must proceed in accordance with the mandate and such law of the case as was established by the appellate court."). On remand, a trial court can only consider "any issue not expressly or impliedly disposed of on appeal." *Firth*, 554 F.2d at 993; *see also Nguyen v. United States*, 792 F.2d 1500, 1502 (9th Cir.1986). District courts "must implement both 'the letter and the spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces.' " *Delgrosso v. Spang & Co.*, 903 F.2d 234, 240 (3d Cir. 1990) (quoting *Bankers Trust Co. v. Bethlehem Steel Corp.*, 761 F.2d 943, 949 (3rd Cir.1985)).

█ Microsoft's reliance on the so-called *Bauman* factors is misplaced. *See Bauman v. United States Dist. Ct.*, 557 F.2d 650, 654–55 (9th Cir.1977). *Bauman* does not apply when mandamus is sought on the ground that the district court failed to follow the appellate court's mandate. In at least two cases decided after *Bauman*, this court granted a writ to compel district court compliance with a prior appellate mandate without reference to *Bauman*. *See Brown v. Baden*, 815 F.2d 575, 576 (9th Cir.1987) (mandamus issued to compel district court to comply with prior appellate order to reassign case); *ATSA of Cal., Inc. v. Continental Ins. Co.*, 754 F.2d 1394, 1396 (9th Cir.1985) (mandamus issued to compel district court to comply with prior appellate mandate that arbitrator should determine the applicable law in commercial dispute).

█ Pointing out that the issuance of a writ is discretionary, *see Kerr v. United States Dist. Ct.*, 426 U.S. 394, 403, 96 S.Ct. 2119, 48 L.Ed.2d 725 (1976); *Lusardi v. Lechner*, 855 F.2d 1062, 1070 (3d Cir.1988), Microsoft contends that this discretion

should not be exercised here because mandamus is a "drastic" remedy for "extraordinary circumstances," *Kerr*, 426 U.S. at 402–03, 96 S.Ct. 2119, and not appropriate unless the right to it is "clear and indisputable." *Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 35, 101 S.Ct. 188, 66 L.Ed.2d 193 (1980). Microsoft argues that plaintiffs cannot make that showing because the orders at issue involved class certification, a matter committed to the discretion of the district court and not now appealable. The question here, however, is whether the district court's order revising the class definition on remand conflicted with the appellate mandate. Moreover, mandamus may be appropriate even concerning traditionally discretionary matters. *See, e.g., Brown*, 815 F.2d at 576.

■ Microsoft's other argument, that issuance of the writ will frustrate the policy against piecemeal litigation, is inapposite. *See, e.g., Kerr*, 426 U.S. at 403, 96 S.Ct. 2119; *Lusardi*, 855 F.2d at 1069; *Monti v. Department of Indus. Relations*, 582 F.2d 1226, 1228 (9th Cir.1978). That policy has no relevance where mandamus is sought to compel the district court to follow the appellate mandate and avoid relitigation of final judgments. *See General Atomic*, 436 U.S. at 497, 98 S.Ct. 1939 ("A litigant who ... has obtained judgment ... after a lengthy process of litigation ... should not be required to go through that entire process again to obtain execution of the judgment....").

Accordingly, if the district court disregarded this court's mandate, as plaintiffs contend, mandamus is the appropriate remedy.

## III. THE SCOPE OF THIS COURT'S MANDATE

■ The appeal before us in *Vizcaino I* and *II* was taken from a judgment on the merits denying relief to plaintiffs and the members of the class certified by the district court. Because that class included "[a]ll persons employed by Microsoft ... who are denied employee benefits because

they are considered independent contractors or employees of third party employment agencies, but who meet the definition of employees of Microsoft Corporation under the common law," that judgment would be res judicata with respect to the claims not only of the plaintiffs and other workers who had worked as independent contractors in positions reclassified by the IRS or voluntarily converted by Microsoft (included in the revised class) but also of all other common law employees of Microsoft (now excluded). In other words, had the judgment not been reversed, it would have been preclusive as to all the workers now excluded from the class under the district court's revised class certification. Were the case before us now in that posture—i.e., had this court affirmed rather than reversed—there is little doubt what Microsoft's position would be as to who is included in the class. Microsoft's argument that the scope of the class was not material to the issue on appeal is not tenable for that reason alone—substantial rights were at issue for all the members of the certified class.

Although the discussion in the prior opinions focused on the plaintiffs in their capacity as independent contractors rather than as temps, this was a natural consequence of the legal posture of the case presented, not a tacit limitation on the class' claims. The class certification is a central premise of both opinions. Thus, in *Vizcaino I*, the panel relied on the Magistrate Judge's finding that "Microsoft conceded the fact that the named plaintiffs and the class they represent generally were common law employees" and that Microsoft "reserved only the right to object to the employment status of particular plaintiffs during certain periods of their tenure with Microsoft." 97 F.3d at 1193 n. 4. It went on to "hold that the named plaintiffs and the class they represent are covered by the specific provisions of the ESPP." *Id.* at 1197. In *Vizcaino II*, the en banc court states that "the ESPP must, essentially, be made available to all em-

ployees" and "[t]he ESPP was created and offered to all employees." 120 F.3d at 1011, 1014. And the class is an integral element of the mandate which remanded "for the determination of any questions of individual eligibility for benefits that may remain following issuance of this opinion and for calculation of the damages or benefits due the various class members." *Vizcaino I,* 97 F.3d at 1200; *see also Vizcaino II,* 120 F.3d at 1015 ("Any remaining issues regarding the rights of a particular worker in the ESPP and his available remedies must be decided by the district court upon remand."). Thus, the district court's statement that this case is about a particular group of Microsoft employees who share "distinct circumstances" is unfounded.

Microsoft's basic contention is that the district court properly exercised its discretion to modify the scope of the class. Its brief takes a scatter-gun approach, laying down heavy fire but consisting largely of blanks.

■ Microsoft's major point seems to be that the certification order was only "provisional" and hence subject to alteration at a later point. Under Federal Rule of Civil Procedure 23(c)(1) a class certification order "may be conditional," but the district court's order was not conditional, much less provisional (a concept for which Microsoft cites no authority). Over Microsoft's objection, the court "certified [the class] as plaintiffs request for all issues remaining in the case," the only qualification being that "[i]f at a later date it appears certain questions should be decertified pursuant to 23(c)(4)(A), the Court can do so." We do not interpret the statement referring to the possible withdrawal of certain issues from class treatment as a reservation of the right to substantially narrow the membership of the class at some future date. Certainly, our mandate (which runs to all common law employees of Microsoft) cannot be read as contemplating redefinition of the class; our direction to the district court to determine questions of "individual eligibility" presupposed the existence of the certified class. *Vizcaino I,* 97 F.3d at 1200.

■ Rule 23, moreover, does not provide authority for the modification. Rule 23(c)(1) permits a certification order to be altered or amended "before the decision on the merits," not afterward. *See Scott v. City of Anniston,* 682 F.2d 1353, 1357 (11th Cir.1982) (ruling that appellate decision finding evidence sufficient to make prima facie case and insufficient to sustain proffered defense and remanding for further proceedings as to individual class members' damages was a "decision on the merits" precluding subsequent class modification under Rule 23(c)(1)); *Jimenez v. Weinberger,* 523 F.2d 689, 697 (7th Cir. 1975) (holding that Rule 23(c)(1)'s "explicit permission to alter or amend a certification order before decision on the merits plainly implies disapproval of such alteration or amendment thereafter"). This court's prior decision adjudicates the merits of the plaintiff class' claim, leaving only "questions of individual eligibility for benefits that may remain ... and calculation of the damages or benefits due the various class members." *Vizcaino I,* 97 F.3d at 1200.

■ Nor is there merit to Microsoft's claim that the modification was required to comply with Rule 23. In its 1993 order certifying the class under both Rules 23(b)(1)(A) and 23(b)(2), the district court found that "[p]laintiffs and defendants agree that plaintiffs' class meets the requirements of numerosity, commonality, typicality, and adequacy imposed under Fed.R.Civ.P. 23(a)." It is too late now—after a decision on the merits—to argue that commonality and typicality are lacking.

■ The district court's position that "unusual circumstances" permit redefinition of the class after decision on the merits lacks legal support and is erroneous. We are aware of no authorities defining what "unusual circumstances" allow a district court to circumvent the restriction

imposed by Rule 23(c)(1). That the class could now comprise several thousand members rather than the "several hundred members" contemplated in the certification ruling, does not strike us as justifying a revision that wipes out the right of numerous class members to share in the benefits of the class adjudication. The "unusual circumstances" rather seem to arise from the district court's perception that the class it previously certified is "circular," i.e., that it relies on a legal conclusion to define membership in the class. According to the court, "common law employees are plaintiffs, and plaintiffs are common law employees." But the court's reading reflects a misconception. It is implicit in the definition of the class that its members are persons who *claim* to have been (or to be) common law employees who were denied ESPP benefits. That under this definition ultimate success may turn on resolution of a disputed legal issue does not make it circular. In *Forbush v. J.C. Penney Co.*, 994 F.2d 1101 (5th Cir.1993), the court, dealing with an analogous situation, said:

> Penney asserts that this definition is hopelessly "circular," as the court must first determine whether an employee's pension benefits were improperly reduced before that person may be said to be a member of the class. This argument is meritless and, if accepted, would preclude certification of just about any class of persons alleging injury from a particular action. These persons are linked by this common complaint, and the possibility that some may fail to prevail on their individual claims will not defeat class membership.

*Id.* at 1105. Defining a class of employees as linked by their common claim to have been denied benefits to which they were entitled as common law employees is no more circular than defining a class of employees by their common claim to have been injured by their employer's unlawful actions. *See, e.g., Vaszlavik v. Storage Tech. Corp.*, 183 F.R.D. 264, 267 (D.Colo. 1998) (certifying plaintiffs' class defined by description of plaintiffs' legal claim).

We conclude that the district court's orders did not conform to the mandate.

## IV. EXECUTION OF THE MANDATE

This court's mandate therefore left the district court no room to revise the class definition, but it charged the court with "the determination of any questions of individual eligibility for benefits." *Vizcaino I*, 97 F.3d at 1200. Plaintiffs contend that they are entitled to a class-wide judgment, encompassing not only workers in IRS-reclassified positions but also workers voluntarily converted and temps hired subsequent to conversion. Microsoft's position appears to be that, while it conceded in the district court that the named plaintiffs and the members of the class were common law employees, *see id.* at 1193 n. 4, their common law employee status is now open for reexamination.

To the extent the district court granted summary judgment for plaintiffs, we agree. The named plaintiffs and others similarly situated—which to the court meant independent contractors who worked in positions reclassified by the IRS or who were voluntarily converted by Microsoft—were entitled to participate in the ESPP both before and after their conversion to temporary employees in essentially the same job positions. Microsoft's argument at this point, that its earlier concession regarding the common law employee status of the members of the class was merely arguendo, is without merit. Not only did Microsoft stand by this concession throughout the litigation but the district court also found it supported by the facts and ruled that Microsoft continued to be bound by it. We agree with the district court that this group of past and present employees is entitled to partial summary judgment, leaving for further determination only the issue of past damages. Their right to participate being clearly established, we also see no reason why those workers in this group who are currently

employed by Microsoft should not now participate on an ongoing basis in the ESPP, and entry of an order to that effect is now appropriate.

The district court further ruled, however, that its conclusion with respect to the above group could apply to temps "only insofar as their circumstances match those of the named plaintiffs (conversion to same position)." We are at a loss to understand the full import of that statement, particularly the parenthetical comment. We assume that the court meant to restrict eligibility to temps who had previously been independent contractors and had then been converted to temps in the same position. We make that assumption because the district court rejected plaintiffs' contention that workers who occupy positions reclassified as common law employees are for that reason eligible for ESPP benefits. The district court reasoned that the question presented by the temps' claim was "not whether a worker is an employee or an independent contractor ... [but] *which* company is the worker's employer (Microsoft or the temporary agency)." The answer to that question, it said, lies in an assessment of the common law factors articulated in *Nationwide Mutual Ins. Co. v. Darden,* 503 U.S. 318, 323–24, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992), although the court singled out five factors as determinative: recruitment, training, duration, right to assign additional work, and control over the relationship between worker and agency.

We agree that the assessment of the triangular relationship between worker, temporary employment agency and client is not wholly congruent with the two-party relationship involving independent contractors. In posing the question as the district court did, however, it set up a false dichotomy. Even if for some purposes a worker is considered an employee of the agency, that would not preclude his status of common law employee of Microsoft. The two are not mutually exclusive. "[In the] determination of whether a per-

son is an employee ... [courts look to] the usual common law factors ." *Vizcaino II,* 120 F.3d at 1009–10 (citing *Darden,* 503 U.S. at 322, 112 S.Ct. 1344). *Darden* observed that "we construe the term [employee] to incorporate 'the general common law of agency.' " 503 U.S. at 323 n. 3, 112 S.Ct. 1344. At common law, "a servant ... permitted by his master to perform services for another may become the servant of such other in performing the services." Restatement (Second) of Agency § 227 (1958). "Starting with a relation of servant to one [employer], he can become the servant of another [employer] only if there are the same elements in his relation to the other as would constitute him a servant of the other were he not originally the servant of the first ." *Id.* § 227 cmt. a. "Many of the factors stated in Section 220 [setting out ten traditional agency factors which are cited in *Darden,* 503 U.S. at 324, 112 S.Ct. 1344] are also useful in determining whether the lent servant has become the servant of the borrowing employer." *Id.* cmt. c; *see also id.* § 226 ("A person may be the servant of two masters, not joint employers, at one time as to one act, if the service to one does not involve abandonment of the service to the other."); *Kelley v. Southern Pac. Co.,* 419 U.S. 318, 324, 95 S.Ct. 472, 42 L.Ed.2d 498 (1974) (under common law, plaintiff can establish employment by rail carrier while nominally employed by another as borrowed servant, as servant of two masters, or as subservant); *Williamson v. Consolidated Rail Corp.,* 926 F.2d 1344, 1348–49 (3d Cir.1991) (following *Kelley* ); *Nyman v. MacRae Bros. Constr. Co.,* 69 Wash.2d 285, 418 P.2d 253, 254 (1966) (noting that there are three possibilities for a worker's status in a tort suit: servant of the general master; servant of the borrowing master; servant of both); *In re Earthmovers, Inc.,* 199 B.R. 62, 67 (Bankr.M.D.Fla.1996) (finding agency and recipient of services to be "de facto 'co-employers' of [the] workers"). While this court has not heretofore addressed the specific issue, our decision in *Burrey v. Pacific Gas and Elec. Co.,* 159

F.3d 388 (9th Cir.1998), is based on the premise that workers leased from an employment agency could be the common law employees of the recipient of their services; their status with respect to the latter must be determined using the *Darden* factors. *See id.* at 394–395.

Finally, the IRS has repeatedly looked to common law principles in the determination of common law employee status in three-party employment situations. *See, e.g.,* Rev.Rul. 87–41, 1987–1 C.B. 296 (applying twenty traditional common law factors to hypothetical situations to determine whether technical service workers were employees of employment agency, without ruling whether workers were employees of client); Rev.Rul. 75–41, 1975–1 C.B. 323 (applying common law test derived from Treasury regulations to determine whether workers providing services to medical professionals pursuant to contract with a third-party professional service corporation were employees of the corporation); Rev.Rul. 66–162, 1966–1 C.B. 234 (applying Restatement (Second) of Agency § 226 (1958) in ruling that sales clerks of concessionaire in department store were employees of both concessionaire and store); 14 Standard Federal Tax Reporter (CCH) ¶ 33,538.64 at 60,589 (Jan. 28, 1999) (suggesting that traditional common law factors apply to the determination of whether technical service personnel are employees of the client they serve pursuant to a contract with a third party (e.g., employment agency)).

■ We conclude, therefore, that the determination of whether temps were Microsoft's common law employees turns not on whether they were also employees of an agency but rather on application of the *Darden* factors to their relationship with Microsoft. That, however, need not entangle the district court and the parties in interminable proceedings resolving the issue on a worker-by-worker basis. As the Supreme Court pointed out in *Darden,* "application [of the factors] generally turns on factual variables *within an employer's*

*knowledge,* thus permitting categorical judgments about the employee' status of claimants *with similar job descriptions."* 503 U.S. at 327, 112 S.Ct. 1344 (emphasis added).

The facts of this case confirm the validity of the Court's observation in *Darden.* The IRS made its determination of employee status with reference to specific positions. In a series of letters, the IRS advised Microsoft that "we have determined that services performed for Microsoft by an individual in the position commonly referred to as [here followed the titles of various positions such as computer based training, proof reader, formatter, etc.] constitutes an employer-employee relationship . . . It is our conclusion that Microsoft either exercised, or retained the right to exercise, direction over the services performed. This control establishes an employer-employee relationship." *Vizcaino I,* 97 F.3d at 1190 n. 2. The IRS determinations allow no exception for individuals in these positions on the ground that they may be on the payroll of employment agencies. Presumptively, therefore, any individual occupying an IRS reclassified position and otherwise qualified under the ESPP is an eligible common law employee—regardless of whether he or she had been personally converted from independent contractor to temp as a result of the IRS determination. The plan, by its terms, excludes short-term workers who work less than five months per year or less than half-time. There may, of course, be special circumstances affecting the rights of particular workers. The relevant facts would be within Microsoft's knowledge. The burden should therefore be on Microsoft to show why any particular worker serving in a reclassified position who meets the ESPP service requirements is not entitled to participate.

We reach the same conclusion with respect to workers in positions voluntarily converted by Microsoft. The district court found that workers who had previously been independent contractors but were

voluntarily converted by Microsoft to temporary agencies contemporaneous with the IRS reclassification should also be considered common law employees. The record does not disclose whether the voluntary conversions were of positions, in a fashion analogous to the IRS reclassification, i.e., whether Microsoft determined with reference to particular positions that services performed constitute an employer-employee relationship. If that is the case, the conclusion would be the same as in the case of the IRS reclassifications: Presumptively, any individual occupying a converted position and otherwise qualified under the ESPP is an eligible common law employee—regardless of whether he or she had been personally converted from independent contractor to temp as a result of Microsoft's conversion. If, on the other hand, Microsoft merely changed the treatment of particular individuals qua individuals, that would not inure to the benefit of other individuals hired as temps. We assume that the evidence illuminating the nature and effect of these conversions is readily available from Microsoft and will enable the district court to make the appropriate determination.

The record does not disclose whether there are in addition workers who served neither in reclassified nor converted positions but who may nevertheless be common law employees eligible to participate in the ESPP but denied benefits. The determination whether a worker was or is a Microsoft common law employee will be governed by the *Darden* factors. We leave it to the district court to determine the appropriate procedure for dealing with any such claims.

## V. CONCLUSION

We held in *Vizcaino I* and *II* that all common law employees of Microsoft are entitled to participate in Microsoft's ESPP, subject to the exceptions specified in the plan. The members of the certified class share a common claim to past and, in certain cases, current and future partic-

ipation. They are entitled to press their claim in this action under the procedure we have outlined.

The petition is GRANTED and the matter is REMANDED to the district court for further proceedings consistent with this opinion. Because our opinion also disposes of the issues raised in plaintiffs' appeal from the denial of a permanent injunction, we DISMISS that appeal without prejudice.